PAN AMERICAN TANKERS CORPO-
RATION, a corporation and Whitehall
Navigation Corporation, a corporation,
Plaintiffs,

v.

The REPUBLIC OF VIETNAM, a sover-
eign, Nha May Xi-Mang Ha-Tien, d/b/a
Hatien Cement Plant, a corporation, and
Viet-Nam Xi-Mang Cong-Ty, d/b/a Vix-
ico, a corporation, Defendants.

No. 68 Civil 3079.

United States District Court
S. D. New York.

Feb. 25, 1969.

See also D.C., 291 F.Supp. 49.

Scoll & Coleman, New York City, for
plaintiffs; David E. Scoll, New York
City, of counsel.

Haight, Gardner, Poor & Havens, New
York City, for defendant The Republic
of Viet Nam (appearing specially);
James M. Estabrook, New York City, of
counsel.

## OPINION

HERLANDS, District Judge:

### I.

The question now presented to the Court for decision is whether the plea of sovereign immunity entered by The Republic of Viet Nam in opposition to plaintiffs' motion to compel arbitration is sufficient in law.

Because of the sketchy and elliptical manner in which the position of The Republic of Viet Nam was formulated when this matter first came before the Court, it has taken two opinions by the Court— one reported at 291 F.Supp. 49 (S.D.N.Y. 1968), the other filed December 6, 1968 as a memorandum opinion—to develop the record into its present state.

Pursuant to those opinions, counsel for plaintiffs and counsel for The Republic of Viet Nam have submitted affidavits, documentary exhibits, and memoranda of law. Although the Court recognizes that certain disputed issues of fact and conflicting legal interpretations exist, the Court holds that The Republic of Viet Nam may not assert sovereign immunity as a defense to the motion to compel arbitration.

Plaintiffs' motion arises out of an agreement for the transportation of cement, which, plaintiffs allege, was entered into with them by the three named defendants. The procurement and transportation of this cement were to be financed through use of funds made available by the Agency for International Development (A.I.D.), a United States governmental agency.

The defendants Hatien Cement and Vixico (apparently two private entities, though Hatien Cement was organized, and its stock is wholly owned by, The Republic of Viet Nam), in notices dated January 10, 1968, announced the opening of bids for the supply and transportation of cement.

The invitation to bid for the transportation contract detailed various conditions. The bids were to be submitted to the Directorate of Commercial Aid, Ministry of Economy of The Republic of Viet Nam. The Directorate reserved the right to accept or reject any offer. Demurrage would be paid by the importers, while dispatch would be paid to the Director of Commercial Aid. All bidders were required to furnish a bid bond in favor of "DCA/Ministry of Economy" (Directorate of Commercial Aid, Ministry of Economy). A performance bond in favor of the Director of Commercial Aid had to be furnished by the successful bidder within ten days after official notification of award. The Directorate of Commercial Aid, Hatien Cement and Vixico were signatories to the invitation to bid.

The Director of Commercial Aid opened all the bids received on January 17, 1968. George Bates, president of plaintiffs, was present in the Director's office, and heard the Director announce that plaintiffs' bid for the cement transportation was lowest. In his affidavit, sworn to December 23, 1968, Bates states that the Director then informed him that a contract would be awarded plaintiffs upon receipt of written approval from A.I.D.

On January 27, 1968, plaintiffs' agent in Saigon was handed a letter by the Director of Commercial Aid which states, in relevant part: "This is to confirm that award has been made to George T. Bates and Co. Inc. for the transportation of 190.000 M/T of cement * * *."

Anglo Vietnam Co., Ltd., plaintiffs' Saigon agent, prepared a Fixture Note, dated January 27, 1968. This Fixture Note (at page "3", provision "13/." thereof) expressly incorporated the terms of an unsigned "GENCON Charter Party" and unsigned "Riders attached" (consisting of two pages). The second page of the last mentioned Rider contains provision "31" entitled "Arbitration Clause," requiring arbitration of disputes.

After negotiation, other discussions, and some correspondence, the Fixture Note was accepted and signed by the Director of Commercial Aid, Hatien Ce-

ment, and Vixico, on or about February 22, 1968.

By letter dated May 14, 1968, and "writ" of May 15, 1968, Hatien Cement and Vixico notified plaintiffs' agent that they would not accept any more cement nor be financially responsible for any fee relating to the use of plaintiffs' ships. As explained in another letter dated May 14, 1968 from Hatien Cement and Vixico to the Minister of Economy, the "Tet offensive" produced a "pessimistic" market for cement and, as a consequence, there was no available warehouse space. The letter requested the Minister to intervene and to ask plaintiffs to suspend or cancel the contract because this was a "case of superior force."

In a letter to plaintiffs dated July 3, 1968, the Minister of Economy sought to settle the difficulties ensuing after the letter of May 14, 1968 from Hatien Cement and Vixico to plaintiffs. The Minister stated that he would request the cement importers to honor the cement transportation contract and to accept the remaining cement, but that the importers and plaintiffs would have to negotiate and settle the question of damages attributable to delay as a separate matter.

On July 29, 1968, plaintiffs filed their complaint *in personam* with maritime attachment and garnishment. On August 14, 1968, they served their notice of motion for an order to compel arbitration. It is to this motion that The Republic of Viet Nam has appeared specially and entered its plea of sovereign immunity.

The Republic of Viet Nam contends that it is entitled to immunity because its role in the transactions detailed above was that of governmental supervisor over the expenditure of foreign exchange, and, therefore, its acts were political or sovereign in nature.

Plaintiffs, on the other hand, vigorously deny that the involvement of The Republic of Viet Nam in the transactions was so limited. In their view, the various documentary exhibits and affidavits filed in this case demonstrably preclude such a finding. Moreover, plaintiffs ar-

gue, even if The Republic of Viet Nam acted in the transaction only in a supervisory manner, it would not be entitled to immunity because the courts have not interpreted the category of immune political acts so broadly as to include such activity. Finally, plaintiffs contend that the central focus of the inquiry must be on the essential nature of the transaction out of which the controversy arose; and, if it should turn out to be commercial, no immunity should be granted, regardless of the extent of governmental involvement.

█ The doctrine of sovereign immunity now generally applied by the courts of this country embodies the restrictive theory as it was set forth in the famous "Tate Letter." (Letter of May 19, 1952 from Acting Legal Advisor Tate to Acting Attorney General Perlman, reproduced in 26 Dep't State Bull. 984 (1952). That letter suggests that immunity be recognized with regard to sovereign or public acts (*jure imperii*) of a state, but not with respect to private acts (*jure gestionis*).

The Court of Appeals for this Circuit has interpreted the category of immune political or sovereign acts restrictively, at least when the State Department has not made an affirmative suggestion of immunity.

In Victory Transport, Inc. v. Comisaria General de Abastecimientos y Transportes, 336 F.2d 354 (2d Cir. 1964), cert. denied, 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965), the court limited immunity to the following classes of governmental action: (1) internal administrative acts, such as expulsion of an alien; (2) legislative acts, such as nationalization; (3) acts concerning the armed forces; (4) acts concerning diplomatic activity; and, (5) public loans. In the Court's view, only these activities were of such a sovereign nature that the interests of private litigants must be sacrificed to the interest of international comity. 336 F.2d at 360.

There is logic to the argument that foreign exchange control is an internal

administrative measure that falls within the immune category of public acts. The critical inquiry, however, concerns the basic character of the line of conduct which generated the lawsuit. As the court in *Victory Transport, supra,* stated:

"The purpose of the restrictive theory of sovereign immunity is to try to accommodate the interest of individuals doing business with foreign governments in having their legal rights determined by the courts, with the interest of foreign governments in being free to perform certain political acts without undergoing the embarrassment or hindrance of defending the propriety of such acts before foreign courts." 336 F.2d at 360.

■ A realistic analysis of the record in this case shows that plaintiffs are not complaining of any conduct involving foreign exchange control. The motion papers allege that The Republic of Viet Nam was a party to a contract with plaintiffs containing an arbitration provision; that an arbitrable controversy has arisen out of this contract; and that The Republic of Viet Nam refuses to proceed to arbitration. The only action that The Republic of Viet Nam would be required to defend in this Court is the making of the contract containing an applicable arbitration provision. And the only behavior that The Republic of Viet Nam would be required to defend before the arbitrators, should the motion to compel arbitration be granted, is the alleged breach of a commercial contract of cement transportation. What The Republic of Viet Nam is accused of doing cannot accurately be characterized as public or sovereign acts. Consequently, immunity against plaintiffs' suit seeking redress of these acts should not be granted.

■ Assuming *arguendo* that the Court has mistaken the proper object of inquiry and has erroneously concluded that the alleged currency control activities are immaterial to the issue of sovereign immunity in this case, the Court is of the opinion that The Republic of Viet Nam has failed to sustain its burden of proving that its role was limited to political or sovereign acts. The documentary evidence demonstrates a continuous, active participation by The Republic of Viet Nam in all of the significant aspects of the cement transportation transaction, including its selection of the winning bidder; its negotiations relating to the Fixture Note; its involvement in the modification of delivery dates; its position as payee of the performance bond and of any "dispatch money" earned; and its negotiations after the alleged breach. Despite the inferences which can readily be drawn from this course of activities, The Republic of Viet Nam has seen fit to submit as evidentiary proof supportive of its plea only the affidavit of The Honorable Bui Diem, Ambassador of The Republic of Viet Nam to the United States, sworn to October 31, 1968. This affidavit merely denies that The Republic of Viet Nam was a contracting party and asserts that it acted only to control the expenditure of foreign exchange. Contrariwise, George Bates, plaintiffs' president, in his affidavit, avers that he was informed by the Director of Commercial Aid of the Ministry of Economy. Mr. Phan-Luong-Quang, that the cement procurement and transportation transactions were a part of the commercial import program of The Republic of Viet Nam. As such, it would appear that the interest of The Republic of Viet Nam and presumably its related activities (at least in the absence of affirmative proof to the contrary) were not limited to political functions, but were intrinsically commercial.

Accordingly, the Court hereby declines to accept the plea of sovereign immunity entered by The Republic of Viet Nam.

## II.

The Republic of Viet Nam appeared specially to enter its plea of sovereign immunity in opposition to this motion. As yet, it has not raised any other objection, or interposed any other defense to the motion, or otherwise asserted its posi-

tion with respect to the merits of the motion. Nevertheless, the presence of certain allegations in the papers of The Republic of Viet Nam makes it necessary to discuss their possible significance in relation to such potential other objections or defenses and, consequently, to provide for their prompt and orderly articulation by The Republic of Viet Nam and their formulation into litigable issues in the light of plaintiffs' position vis-á-vis such objections or defenses.

Following this Court's first opinion of October 11, 1968 (291 F.Supp. 49), The Republic of Viet Nam submitted the affidavit of Ambassador Bui Diem (sworn to October 31, 1968), referred to above. Paragraph "11" of that affidavit asserts:

> "11. Consequently, the signature of the Director of Commercial Aid merely signified the Government's approval of the proposed importation of cement by Hatien Cement and Vixico; it did not mean the Goverment [sic] was also importing the cement nor did it make the Government a party to the agreements."

The reference to "the signature of the Director of Commercial Aid" means the signature on the Fixture Note appearing alongside the following typed legend on page 3 thereof:

> "Accepted:—
> Director of Commercial Aid,
> Ministry of Economy,
> 59 Gia Long, Saigon."

As previously noted, the Fixture Note expressly incorporated the terms of an unsigned "GENCON Charter Party" and those contained in two pages of additional clauses, each page entitled "Rider to Charter Party." "Page two" of the riders contains a clause entitled "31. *ARBITRATION CLAUSE*", reading as follows:

> "31. *ARBITRATION CLAUSE*— Should any dispute arise between Own-

ers and Charterers, the matter in dispute shall be referred to three persons at New York, U.S.A., one to be chosen and appointed by the Owners, one to be chosen and appointed by the Charterers, and the third by the two so chosen; their decision or that of any two of them to be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be all commercial men."

Paragraph "10" of Ambassador Bui Diem's affidavit makes an oblique reference to Vietnamese law.* This cryptic reference, taken in conjunction with Paragraph "11" of said affidavit, is susceptible of the interpretation that The Republic of Viet Nam is contending that, under the applicable law of Viet Nam (A) the signature of the Director of Commercial Aid signified *only* that the Vietnamese Government had *approved* the proposed importation of cement and that said signature did not make that Government a principal or "a party to the agreements"; and (B) assuming *arguendo* that The Republic of Viet Nam did enter into a contract of some kind with plaintiffs, whatever contract arose out of the negotiations and papers did not contain or incorporate the arbitration clause upon which plaintiffs now rely.

These possible contentions, which evidently mix fact and law, are obscurely mirrored in Paragraph "15" of the Ambassador's affidavit, reading as follows:

> "15. Despite repeated cable and letter inquiries I have received no indication whatsover that either the Republic of Viet Nam or the Ministry of Economy either participated as principles in the importation of the cement or participated in the decision to suspend the contract; rather, their only participation was the Governmental

---

* For choice-of-law purposes, it may be assumed (at least for the present discussion) that the agreement involved herein was concluded in Vietnam. Of course, different choice-of-law principles would be applicable in determining what evi- dence would be admissible to show the existence or absence of a contract between plaintiffs and The Republic of Viet Nam, containing a binding arbitration provision.

function of approving the expenditure of foreign exchange."

If content be given to the first legal argument possibly alluded to in the Ambassador's affidavit, it would seem to be the ostensible position of The Republic of Viet Nam that, in the circumstances of this case, there is ambiguity in the word "accepted" as it appears above the signature of the Director of Commercial Aid, Ministry of Economy of The Republic of Viet Nam. The word "accepted", when used technically in American contract law, has a specific connotation. However, The Republic of Viet Nam appears to assert that—in the context of this agreement financed by A.I.D. funds, where the Vietnamese Government was, arguably, only approving the contract in the discharge of its governmental function of "approving the expenditure of foreign exchange" (Paragraph "9")—its imprimatur (as manifested by the signature of its Director of Commercial Aid under the word "accepted") did not prove that that Government entered into the contract as principal or party. Quite relevant to this position would be the principles of Vietnamese law relating to (1) the meaning of the word "accepted" on a contract; (2) the need for governmental approval on contracts such as the one involved here; (3) the function of the Director of Commercial Aid, including the question of whether he is charged with the duty of approving foreign exchange expenditures, or has authority so to approve; and (4) the nature of the conduct which binds one as a contracting party (*i. e.* the analogue of the American law concept of "manifestation of intent to contract.").

As the Court has indicated, the other possible legal theory lurking in the language contained in the Ambassador's affidavit (see Paragraph "10" thereof) is that The Republic of Viet Nam challenges plaintiffs' view that the Fixture Note and the papers incorporated into the Fixture Note by explicit reference constitute the controlling contract.

In exploring the implications of this position, the Court has observed that the invitation to bid for ocean transportation of bagged cement—Exhibit "B" to the Ambassador's affidavit—contains provisions under the heading: "Penalties and Regulation of Disputes." Subparagraph "4" under that heading reads:

"All disputes regarding this bid will be submitted before the Tribunal of Commerce of Saigon."

The language just quoted would indicate (at least literally) that the only disputes encompassed therein are those "regarding this bid." That is the view expressed by plaintiffs (Plaintiffs' Memorandum of Facts in Opposition to Special Plea of Sovereign Immunity of Defendant Republic of Viet Nam, filed November 12, 1968, at 6). The Ambassador's affidavit, Paragraph "8", however, refers to the disputes clause contained in the invitation to bid, and, in summarizing that provision as covering "all disputes," omits the restrictive phrase "regarding this bid."

The invitation to bid contains (at page 2 thereof) a number of provisions under the subheading "Charter Party". This subheading appears under Paragraph "V." captioned "Terms of carriage acceptable." The terms of carriage cover three pages, setting forth numerous subheadings including "Penalties and Regulation of Disputes" (though this paragraph is unclearly presented either as a sub-subdivision of "Bond Requirements" or as an independent subject). The subheading entitled "Charter Party" concludes with the following language: "Other terms per terms of GENCON Charter Party." The effective scope of this incorporation of GENCON Charter Party by reference, is by no means indisputably clear.

In Paragraph "9" of the Ambassador's affidavit the affiant refers to the Fixture Note submitted by plaintiffs' agent, Anglo Vietnam Co., Ltd. (Exhibit "C" to the Ambassador's affidavit). The affidavit characterizes the terms of the Fixture Note as being "merely supplementary" to the terms of the invitation to bid, at least with respect to most of the terms of the Fixture Note. However,

the affiant points out that "Rider #31 [sic] contains a New York arbitration clause."

Paragraph "10" of the Ambassador's affidavit reads as follows:

"10. I am advised that under the law of Viet Nam an acceptance of a bid may contain matter supplemental to the invitation, but it may not contain conditions different from or to be substituted for conditions in the invitations to bid. Rather, while the bid may amplify provisions in the invitation, it may not amend them. Thus, the fixture note did not, by itself, constitute a new contract."

There thus appears an intimation that "31. *ARBITRATION CLAUSE*" (incorporated in the GENCON Charter Party) is not binding on The Republic of Viet Nam under either one of two theories of Vietnamese law: (1) that the Fixture Note, which incorporates the GENCON Charter Party, is not binding to the extent that it contains additional terms that are not mere clarifications or amplifications of the terms set forth in the invitation to bid, or (2) that the Saigon "all disputes" clause contained in the invitation to bid, rather than the New York "31. *ARBITRATION CLAUSE*", is the applicable provision for the reason that the latter is an invalid attempt to substitute it for the former provision.

The foregoing analysis thus leads to a crossroad of possible contentions: (1) that The Republic of Viet Nam was not a party-principal to any contract with plaintiffs; (2) that the Vietnamese Government, while a party to a contract with plaintiffs, never agreed to arbitrate any disputes arising from that contract in New York.

■ If either of these contentions is, *in fact, being advanced, a new and independent issue will have been raised under § 4 of the Federal Arbitration Act, 9 U.S.C. § 4 (1964). Whether a person is a party to an arbitration agreement is within the statutory issue of "the making of the agreement." Tubos De Acero De Mexico, S. A. v. Dynamic Shipping, Inc., 249 F.Supp. 583 (S.D. N.Y.1966). In that event, the Court must proceed "summarily to the trial of that issue." 9 U.S.C. § 4 (1964).

■ The papers submitted by The Republic of Viet Nam in their present form are, however, not sufficient to present a genuine issue as to "the making of the agreement for arbitration." See Tubos De Acero De Mexico, S. A. v. Dynamic Shipping, Inc., *supra*, 249 F. Supp. at 587–591. To adopt Mr. Justice Harlan's words written in another context, in view of "the formidable obscurity" of the affidavit submitted in behalf of The Republic of Viet Nam, the Court will "make no attempt to drain the bog at this point." Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 156, 88 S.Ct. 1981, 1993, 20 L.Ed.2d 982 (1968).

The circumlocutory manner in which the possible objections of The Republic of Viet Nam have been expressed can scarcely be attributed to the ingenuousness of counsel. The time has come for a clear and definite statement of contentions.

The Court will hold in abeyance its decision ordering the parties to proceed to arbitration and will grant The Republic of Viet Nam leave to file such papers in opposition to the motion, as it may be advised, within ten days after the date of the filing of this opinion.

Any papers submitted by The Republic of Viet Nam shall state in specific, concise, direct, and plain terms *all* of the grounds of *all* of its objections to the arbitration proceedings demanded by plaintiffs. All averments of grounds of objection shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances.

So ordered.