**AEROTRADE, INC. and Aerotrade International, Inc., Plaintiffs,**

v.

**REPUBLIC OF HAITI, Defendant.**

**No. 73 Civil 3587.**

United States District Court,
S. D. New York.

May 24, 1974.

See also, D.C., 376 F.Supp. 1286

Regan, Goldfarb, Powell & Quinn, New York City, Robert Aronson, Jan D. Atlas, Howard Breindel, New York City, for plaintiffs.

Andreas F. Lowenfeld, New York City, for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, two Florida corporations, commenced this action against the Republic of Haiti to recover, among other items of damage,[1] ·$867,000 for goods sold and delivered to the defendant and services rendered. The complaint alleges that the Republic is a foreign state and a nondomiciliary of the Southern District of New York. The plaintiffs applied. for and were granted an order of attachment against the funds on deposit at the First National City Bank of New York ("City Bank") to the credit of Banque Nationale de la Republique d'Haiti ("Banque") upon an allegation that Banque is wholly owned by, and the alter ego of, the Republic of Haiti.[2] The funds so attached totalled $867,000.

The Republic of Haiti moves to dismiss the complaint upon the grounds: (1) that it is entitled to sovereign immunity with respect to plaintiffs' claim; (2) that the court lacks subject matter jurisdiction under New York State's statute dealing with actions by non-resident corporations;[3] and (3) that the court lacks jurisdiction in that the defendant has not been served with process nor has any of its property or assets been attached within the state, based upon a denial that Banque is its alter ego. Any one of these contentions, if valid, would entitle defendant to prevail on its motion to dismiss the complaint. We consider first its claim of sovereign immunity.

The defendant, asserting that plaintiffs' claim is based upon military procurement contracts, sought a suggestion from the State Department to this court that it was entitled to sovereign immunity and that the action be dismissed and the attached funds released. Prior to the hearing of argument on this motion, the defendant withdrew its request. Thus the matter is one for the court's determination without the benefit of any position by the State Department.[4]

Since 1962, when the well-known Tate letter was issued, our government has adhered to a policy under which the rule of absolute sovereign immunity is relaxed in favor of a restrictive theory of sovereign immunity as to private acts or commercial transactions (*jure gestionis*) and is continued as to a foreign government's public and governmental functions (*jure imperii*).[5] That restrictive

---

1. These include primarily lost profits in connection with undelivered portions of the alleged contracts set forth in the complaint.

2. Plaintiffs had obtained a prior order of attachment, but after its service City Bank filed a statement with the United States Marshal that the defendant, the Republic of Haiti, had no bank account with it, nor was it in possession or control of any funds or property belonging to the defendant. Thereafter plaintiff obtained the present attachment.

3. N.Y. Business Corporation Law § 1314 (McKinney's Consol.Laws, c. 4, Supp.1973).

4. *See* Republic of Mexico v. Hoffman, 324 U.S. 30, 34–35, 65 S.Ct. 530, 89 L.Ed. 729 (1945); Isbrandtsen Tankers, Inc. v. President of India, 446 F.2d 1198 (2d Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 452, 30 L.Ed. 2d 369 (1971); Victory Transport, Inc. v. Comisaria General, 336 F.2d 354, 360 (2d Cir. 1964), cert. denied, 381 U.S. 934, 85 S. Ct. 1763, 14 L.Ed.2d 698 (1965).

5. 26 Dept.St.Bull. (1952); *see* New York & Cuba Mail S.S. Co. v. Republic of Korea, 132 F.Supp. 684 (S.D.N.Y.1955).

policy was more precisely defined, for those cases where the State Department had not passed upon a request for immunity, by our Court of Appeals in Victory Transport, Inc. v. Comisaria General.[6] The court there held that among the acts of a foreign state which still continued to enjoy sovereign immunity were those "concerning the armed forces," and this is the issue presented in the instant case.

 The parties have submitted extensive affidavits, documents and briefs, and after argument, at the court's instance, additional affidavits and briefs directed to specific points of contention. The court is satisfied each side has presented all available information pertaining to the issue of sovereign immunity based upon "acts concerning the armed forces" and that pretrial procedures or a plenary trial will not yield additional relevant factual material.[7]

In support of its claim of sovereign immunity, the Republic of Haiti contends that the subject matter of the contract sued upon was military procurement for its air, land and naval forces. The written confirmation, dated January 20, 1972, of the oral agreement between the plaintiffs and the Republic was signed on defendant's behalf by its Minister of Defense and Finance. From this document and the invoices attached to the complaint, it is clear that the goods covered by the contracts, for which plaintiffs seek recovery in this action, include armed patrol boats, armed helicopters, machine guns, rifles, anti-aircraft guns and ammunition. The na-

ture of the material and the function of plaintiffs with respect thereto is underscored by a letter by defendant's Secretary of Foreign Affairs sent to our Department of State, advising that "Mr. James Byers [plaintiffs' president] has been selected as exclusive representative of the Haitian Government to the United States of Ameria for any purchase of arms and military equipment." Additionally, defendant submits a letter signed and sent by plaintiffs' president to the president of the Republic less than two months before the filing of this lawsuit, when the relationship of the parties was strained and defendant planned to terminate their contractual arrangement. Among other matters, plaintiffs' president referred to "our contract of January 20, 1972 covering naval patrol vessels and helicopters." Throughout the letter there are descriptions of material delivered and to be delivered which clearly are for armed forces, including naval patrol boats, weapons, pistols, revolvers, grenades, machine guns, cannons, armored vehicles, rifles and other military equipment. The writer stresses that except for plaintiffs' efforts, the defendant "at this time would not have any Air Force or Naval Force, nor the brave Leopards [8] to protect the Duvalier family and the Government"; that the present administration of the Republic of Haiti has permitted plaintiffs "to give you . . . what you require, namely, for the Air Force, the Naval Force, and Leopards . . . ." The letter is replete with other references to "arms and ammunition" relating to the subject matter of

---

6. 336 F.2d 354 (2d Cir. 1964), cert. denied, 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965). See also Heaney v. Government of Spain, 445 F.2d 501 (2d Cir. 1971).

7. The plea of sovereign immunity constitutes an affirmative defense, see Petrol Shipping Corp. v. Kingdom of Greece, 360 F.2d 103, 106 (2d Cir.), cert. denied, 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966), and as such, defendant's motion may be considered under Rule 12(b)(6) of the Federal Rules of Civil Procedure as one for dismissal of the complaint for failure to state a claim for relief. See Miller v. Shell Oil Co., 345 F.2d

891, 893 (10th Cir. 1965); Butcher v. United Elec. Coal Co., 174 F.2d 1003, 1006 (7th Cir. 1949); Bradley v. American Radiator & Std. Sanitary Corp., 6 F.R.D. 37, 39 (S.D. N.Y.1946), aff'd, 159 F.2d 39 (2d Cir. 1947). Since the parties have submitted affidavits to support their respective positions, the Rule 12(b)(6) motion may be disposed of as one for summary judgment as provided in Rule 56.

8. A para-military or police force assigned to guard the president and other members of the Haitian government.

plaintiffs' claim. The defendant has presented such substantial evidence that the subject matter of this suit involves transactions "concerning the armed forces," that prima facie it is entitled to defeat plaintiffs' claim upon a plea of sovereign immunity.

The plaintiffs, recognizing but not conceding the force of the plea, seek to overcome it by arguing "it does not necessarily follow that the procurement of supplies such as helicopters or boats will be utilized for a public purpose or in connection with the armed forces of a government." We pass for the moment the question whether, once it is established that the subject of plaintiffs' suit is a transaction or act "concerning the armed forces," further inquiry may be made as to the use to which the sovereign puts any goods it receives. Plaintiffs offer the affidavit of a helicopter pilot and instructor employed by plaintiffs who was stationed at Port Au Prince, Haiti, for seventeen months until the defendant relieved him of his duties. The substance of his affidavit is that the only military utilization of the aircraft was during the training of some twelve to fourteen Haitian students; that the missions flown by him were "predominantly of a commercial nature." These averments do not defeat Haiti's right to sovereign immunity. The affiant does not state that the helicopters were not used by the Haitian armed forces, and the uses to which he states the helicopters have been put were not inconsistent with their being used by armed forces. Indeed, as noted, the affidavit acknowledges that the helicopters were used for the military training of Haitian students.

■ Most of the other uses cited, such as rescue operations for civilians after a flood, Medivac missions for civilian personnel who are ill and located in inaccessible parts of the country, and missions in support of the customs agency to prevent smuggling into and out of Haiti are not unusual for a military unit in time of peace and are governmental acts. If our military forces were used to aid civilians in disaster areas and military planes were used to carry out such missions of mercy, it would be no less a political or governmental act than if the military forces and planes were engaged in actual combat against a foreign enemy.[9]

■ In addition, the affidavit alleges that at various times the planes were used to fly foreign executives interested in Haiti's economy, or foreign diplomats and dignitaries visiting the country, or for flying religious missions for the installation of new bishops or priests. However, this and the other allegations already referred to as to the uses to which the helicopters were put after their delivery into Haiti do not in any way contradict the fact that the contract upon which this suit is based and the goods sold thereunder involved equipment for the armed forces of Haiti. If the contract sued upon and the performance thereunder fall within one of the categories of public or political acts, as set forth in *Victory Transport*, the con-

9. Moreover, goods need not be of an exclusively military nature (i. e., weapons) for the contracting sovereign to be entitled to a grant of immunity, as long as they are for the use of its armed forces. The court in *Victory Transport*, for example, would apparently have granted sovereign immunity in the case of a nation purchasing shoes for its army. 336 F.2d at 359. *Cf.* Isbrandtsen Tankers, Inc. v. President of India, 446 F.2d 1198, 1200 (2d Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 452, 30 L.Ed.2d 369 (1971); Heaney v. Government of Spain, 445 F.2d 501, 503–504 (2d Cir. 1971). *See also* Kingdom of Roumania v. Guaranty Trust Co., 250 F. 341 (2d Cir.), cert. denied, 246 U.S. 663, 38 S.Ct. 333, 62 L.Ed. 928 (1918) (nation entitled to sovereign immunity in suit on contract for purchase of boots for its army); Comment, Judicial Adoption of Restrictive Immunity for Foreign Sovereigns, 51 Va.L.Rev. 316, 323–24 (1965). *But see* Et Ve Balik Kurumu v. B.N.S. Int'l Sales Corp., 25 Misc.2d 299, 204 N.Y.S.2d 971 (Sup.Ct.1960), aff'd, 17 A.D.2d 927, 233 N.Y.S.2d 1013 (1962) (purchase of meat supply for army held not to be a public act); Article, New Developments in the Law of Sovereign Immunity, 36 Modern L.Rev. 18, 23 (1973).

tracting nation is entitled to a grant of immunity. Once that fact is established it is largely irrelevant how the equipment was used after its delivery. To pursue the subject matter of the transaction into the foreign country and to inquire whether in fact the materials were being used solely and only for the armed forces would be an unwarranted intrusion into the internal affairs of a foreign government.[10]

This is not a case where the nature of the contracts entered into by plaintiffs with the Republic of Haiti was in doubt. Plaintiffs knew a sovereign government was a party to the contracts; they knew that the subject matter of their transactions involved military equipment for Haiti's armed forces; they knew that in the event of a claimed breach of their agreements the defendant had the right to assert a plea of sovereign immunity. In such circumstances the actual uses to which the foreign country may have put the equipment are irrelevant. There may be cases where the terms of the contract are so ambiguous or the nature of the commodities involved so general, or where the identity of the contracting party is in such doubt that further inquiry, such as the actual use to which the foreign sovereign put the items, would be justified in order to decide the issue. But this is not such a case.

Grants of sovereign immunity in contract cases are often objected to on the ground that they force the private party to the contract "to decide at his peril whether the goods ordered from him are those which only a sovereign may own or use, or how ordinary trade goods are to be used."[11] This concern makes a rule based upon the nature of the transaction at the time of contracting, rather than the use to which the goods are eventually put by the purchasing nation, all the more sensible. Such a rule fairly apprises both parties to the contract of the probable consequences in the event that a dispute over the contract arises and does so at a time when each party can weigh the disadvantages of such consequences against the advantages of entering into a contractual relationship.

■ Thus, the helicopter pilot's affidavit does not aid plaintiffs' position. First, it does not raise a material issue of fact as to whether the equipment was used by the armed forces.[12] Second, it does not dispute the fact that the contracts at issue here were for equipment and services for the armed forces. In sum, the court is satisfied that the contracts at issue and the claims sued upon concern the armed forces of Haiti, and plaintiffs have not raised a material question of fact to defeat the Republic's defense of sovereign immunity. This disposition makes it unnecessary to consider the other two grounds urged for dismissal or the plaintiffs' motion for an order directing proper service of process upon the defendant.

The complaint is dismissed and the order of attachment vacated.

---

10. *Cf.* Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 416, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ; Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 45 L.Ed. 456 (1897).

11. Reeves, The Foreign Sovereign Before United States Courts, 38 Fordham L.Rev. 455, 479 (1970).

12. Other exhibits submitted by plaintiffs similarly fail to raise a material issue of fact. A letter, dated November 29, 1973, from an official with the United States Department of the Navy, written in response to a letter from plaintiffs' counsel, merely states that the Navy will not assist Haiti in obtaining

"items which may duplicate the orders Aerotrade was under contract to fill and deliver." It in no way indicates that the contracts between plaintiffs and defendant did not concern the Haitian armed forces. In addition, plaintiffs have submitted "summaries," apparently written by plaintiffs' president, "of the nature and character of the goods and services" that are the subject matter of this lawsuit. These "summaries" are not affidavits and are not the type of material that may be considered by a court on a motion for summary judgment. *See* Fed.R.Civ.P. 56(e). In any event, they do not raise substantial issues of fact as to the non-military nature of the contracts.