**AEROTRADE, INC., Plaintiff,**

**v.**

**AGENCY FOR INTERNATIONAL DE-VELOPMENT, DEPARTMENT OF STATE, Defendant.**

**Civ. A. No. 74–229.**

United States District Court, District of Columbia.

Oct. 17, 1974.

Harry A. Bowen, Washington, D. C., for plaintiff.

Royce C. Lamberth, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This is an action in the nature of mandamus which comes before the Court on cross-motions for summary judgment which raise, among other things, the issue of plaintiff's standing to maintain the action and the Court's jurisdiction over the subject matter. Plaintiff, a Florida corporation engaged in the international arms trade, is involved in a controversy with the Government of Haiti relating to balances allegedly due for armaments and related supplies it procured under what it claims was a contract appointing it Haiti's exclusive

purchasing agent for such items. Plaintiff alleges that in the spring of 1973, following a change in government, Haiti nullified and renounced its obligations under the contract and owes it in excess of $1,000,000. While Haiti is not a party to this action, it appears that plaintiff's version of the facts is strongly disputed by Haiti which represents that plaintiff in fact owes it money.[1] Diplomatic negotiations are taking place.

Asserting that it has no other legal remedy in the United States, *see* Aerotrade, Inc. v. Republic Of Haiti, 376 F. Supp. 1281 (S.D.N.Y.1974), or in the closed courts of Haiti, a "dictatorship," plaintiff seeks an order from this Court directing that all foreign aid to Haiti be terminated in accordance with the provisions of 22 U.S.C. §§ 2370(c) and 2370(e)(1). Alternatively, plaintiff asks that the President be directed to advise the Congress that he will not implement the sanctions of the so-called Hickenlooper Amendment.

Section 2370(c) of Title 22 provides in relevant part that assistance "shall" not be provided to a foreign government indebted to a United States citizen where "such citizen . . . has exhausted available legal remedies," unless the President finds termination of aid "contrary to the national security." Section 2370(e)(1) of Title 22 provides that the President "shall" terminate assistance to a foreign government which has acted to "repudiate or nullify" a contract with a citizen, unless the President certifies to Congress that a waiver of the provision is "important to the national interests of the United States."

Voluminous papers have been filed which raise numerous disputed factual issues. However, it is unnecessary to reach these issues, since the Court has determined that the plaintiff lacks standing and that, in any event, the Court has no jurisdiction to grant the relief requested.

## STANDING

■ Plaintiff claims that the President's failure to terminate summarily all aid to Haiti when these matters were brought to his attention has caused it particularized injury within the meaning of Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, and Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L. Ed.2d 947 (1968), and that therefore it has standing to sue to overturn the President's apparent decision. While plaintiff does not claim to be injured directly, plaintiff's notion is that a suspension of all aid to Haiti would necessarily have the effect of putting pressure on Haiti to come to terms with it. This kind of leverage against foreign governments, plaintiff argues, is clearly within the "zone of interests" the statute was designed to protect. *See* Assn. of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S. Ct. 827, 25 L.Ed.2d 184 (1970).

Apart from considerable uncertainty as to whether such action would aid plaintiff in collecting its debt or would tend to drive Haiti into even greater intransigence, the central fallacy in plaintiff's argument is that the President is not required to terminate aid to Haiti at this point under any circumstances. Both of the statutory provisions involved in this case explicitly recognize the power of the President, in his sole discretion, to continue aid to an offending government if he finds a cutoff would be contrary to "national security," 22 U.S.C. § 2370(c), or certifies to Congress that a waiver of the provision is "important to the national interests of the United States," 22 U.S.C. § 2370(e)(1). At most, then, plaintiff can only ask that the President be re-

---

1. Since Haiti is not a party, and it appears cannot be made a party, serious questions would arise as to whether this action could "in equity and good conscience" go forward in its absence under Rule 19(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. However, in light of the Court's disposition of the matter on other grounds, it is unnecessary to reach this issue.

quired to inform the Congress of his reasons for not deciding to suspend foreign aid to Haiti.

Plaintiff cannot show any direct interest in such disclosure sufficient to give it standing. Its position is not unlike that of plaintiff in United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). In *Richardson,* a federal taxpayer challenged the failure of the C. I. A. to make a public accounting of its use of public funds as required by Art. I, § 9, cl. 7 of the Constitution. The Supreme Court held he lacked standing to litigate this issue which was "committed to the surveillance of Congress, and ultimately to the political process:" (94 S.Ct. at 2947.) In the same way that the plaintiff in *Richardson* lacked standing to force the C. I. A. to make its budget available for public scrutiny, so the plaintiff here cannot show a judicially cognizable injury arising out of the failure of the President to report his reasoning to Congress. As in *Richardson,* the plaintiff here must look to Congress and the political process, not this Court, to compel the President to make public the reasons for his action.

## JURISDICTION

■ Even if plaintiff has standing, this Court lacks subject matter jurisdiction over an action to "enforce" the provisions of 22 U.S.C. §§ 2370(c) and 2370(e)(1).

The statutory scheme was designed to give the President the authority to cut off foreign aid to governments in circumstances where he determines those governments have acted to prejudice the financial interests of our citizens, so that he will not be faced with the dilemma of doing inequity to our citizens or resorting to constitutionally questionable impoundment. Where he determines that aid should be continued in spite of the actions of a foreign government, he is to report to Congress. In this way, delicate political considerations affecting executive actions in the field of foreign affairs as they relate to or impinge upon the appropriations authority of Congress may be kept in an understanding balance.[2]

Courts are not equipped to weigh the competing considerations which Congress and the President must balance in a delicate area such as this and normally have no role to play in this process. Congress has not sought to create one for the Court by an explicit grant of jurisdiction to enforce these statutes. In fact, the statutory scheme is strongly to the contrary.

The statute on its face places substantial discretion in the President. Aid is not automatically terminated. The President is authorized to exercise his expertise in the field of foreign affairs and to weigh the larger national interest over private commercial interests. These provisions create a discretionary power, in effect, to waive or defer operation of the statute's apparent strictures and are in themselves a strong indication that Congress did not intend the courts to intervene to "enforce" the statute at the instance of a private plaintiff. *Cf.* C & S Air Lines v. Waterman Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948).

Moreover, the very generality of the statutory language implies a further discretion in the President to construe and

2. Recently, Congress has considered a possible cutoff of aid to Turkey on the grounds that it engaged in "aggressive military efforts" in Cyprus in violation of a related section of the statute, 22 U.S.C. § 2370(i). Congressional compromises in an attempt to avoid a Presidential veto provide a graphic illustration of the kind of political balances which are involved as Congress and the President hammer out policy in this area of shared powers. See, "Senate Votes to End Arms Aid to Turks," *Washington Post,* Oct. 1, 1974, p. A1, col. 3–4; "Senate, to Avoid a Veto, Voids Turkish Aid Cutoff," *New York Times,* Oct. 10, 1974, p. 1, col. 3; "Turkey Aid Cut Vetoed," *Washington Post,* Oct. 15, 1974, p. A1, col. 1; "House Backs Ford's Veto of Aid Cutoff," *Washington Post,* Oct. 16, 1974, p. A1, col. 7–8; "Hill Approves [New] Bill to Limit Aid to Turkey," *Washington Post,* Oct. 17, 1974, p. A1, col. 7–8.

apply it in particular factual situations, a discretion which in turn makes mandamus an inappropriate remedy. *See* Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 219, 50 S.Ct. 320, 74 L.Ed. 809 (1930). In the particular circumstances of this case, where the underlying facts relating to the dispute between plaintiff and Haiti are unclear and still in dispute, the Court cannot say that the President has clearly abused his discretion in administering the statute by refusing at this time to invoke the drastic remedy plaintiff seeks, apparently preferring to bring more subtle diplomatic pressures to bear on its behalf.

If the policy embodied in 22 U.S.C. §§ 2370(c) and 2370(e)(1) would be better served by cutting off aid to Haiti forthwith, it is for Congress, not this Court, to re-examine the President's position. In this regard, it is worth noting that on July 23, 1974, during open hearings on Foreign Assistance Appropriations for 1975, the Subcommittee on Foreign Operations of the Senate Appropriations Committee heard testimony regarding the controversy between the plaintiff and Haiti, including a long statement by plaintiff's president, James O. Byers.

In the light of the foregoing, plaintiff's reliance on 28 U.S.C. § 1361, which grants the Court mandamus jurisdiction to compel an officer of the United States "to perform a duty owed to the plaintiff", is clearly misplaced. Similarly, even assuming that the President while acting in this sensitive area of foreign affairs is deemed an "agency" within the meaning of the Administrative Procedure Act, it is clear that this plaintiff is not "a person . . . adversely affected or aggrieved by agency action" or "non-action" within the meaning of 5 U.S.C. § 702.

The matters at issue in this case involve political considerations more properly a subject for Congress than for the Court. Absent a specific grant of jurisdiction from Congress, this Court refuses to imply the power to enforce the Hickenlooper Amendment and its progeny from jurisdictional statutes of general application.

The Court holds both that plaintiff lacks standing to maintain this action and that the Court lacks jurisdiction over the subject matter. The defendant's motion for summary judgment is granted. Plaintiff's cross-motion is denied.

So ordered.