**NATIONAL AMERICAN CORPORATION,**
Plaintiff,

v.

**FEDERAL REPUBLIC OF NIGERIA and Central Bank of Nigeria, Defendants.**

**No. 76 Civ. 2745.**

United States District Court,
S. D. New York.

Oct. 13, 1976.

Finley, Kumble, Wagner, Heine, Underberg & Grutman, New York City, for plaintiff; Norman Roy Grutman, Jeffrey H. Daichman, Kenneth J. Gould, New York City, of counsel.

Kissam & Halpin, New York City, for defendants; Leo T. Kissam, James G. Simms, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, a Delaware corporation having a principal place of business in this district, commenced this action against the Republic of Nigeria ("Nigeria"), a foreign government, and the Central Bank of Nigeria ("Central Bank"), a foreign banking institution having its principal place of business in Lagos, Nigeria. Plaintiff seeks to recover from the defendants a sum in excess of $14,000,000, representing an unpaid balance for the purchase price of cement and unpaid demurrage charges claimed to be due under the terms of a written agreement entered into with Nigeria. The complaint alleges that payment for the cement and demurrage charges was guaranteed by an irrevocable letter of credit established by Central Bank in favor of plaintiff under which payments were to be made by Morgan Guaranty Trust Company of New York ("Morgan Guaranty") upon presentation to it by plaintiff of sight drafts accompanied by specified documents. The complaint further alleges that Morgan Guaranty notified plaintiff that it had been instructed by Central Bank to refuse payment for cement deliveries and demurrage charges unless plaintiff submitted documents confirming that (1) it had given two months' advance notice of the departure of each ship engaged to transport the cement for delivery at Lagos, Nigeria, and (2) clearance for such departures had been given by defendants. Plaintiff alleges that these conditions were contrary to its agreement with Nigeria for the sale of the cement and were not contained in the letter of credit.

Simultaneously with the commencement of this action, plaintiff applied for and was granted an attachment against the property of the defendants in this district pursuant to the laws of New York State [1] upon the ground that the complaint demanded a money judgment and the defendants were non-residents of this district. Funds of Nigeria and Central Bank on deposit with Morgan Guaranty were attached by the United States Marshal. The plaintiff, as required by the order of attachment, now moves to prove the ground upon which it was granted.

The voluminous papers submitted on this motion, wherein the parties argue the merits of their respective positions, require the Court to state that on the instant application the sole issue is whether the plaintiff has presented a prima facie case upon its claim.[2] The record as presented requires an affirmative answer.

First, both the contract between plaintiff and Nigeria for the sale and delivery of the cement and the irrevocable letter of credit established by Central Bank are clear, consistent with each other and unambiguous. Central Bank's instruction to Morgan Guaranty to withhold payments unless sixty days' advance notice of each ship's departure had been given and clearance had been obtained from defendants appears on its face to be contrary to the cement agreement and letter of credit. Indeed, although making no express acknowledgment of

1. N.Y.C.P.L.R. § 6201(1) (McKinney's 1963); Fed.R.Civ.P. 64.

2. *Aerotrade, Inc. v. Banque Nationale De La Republique D'Haiti,* 376 F.Supp. 1286, 1287 (S.D.N.Y.1974); *World-Wide Carriers, Ltd. v. Aris S.S. Co.,* 301 F.Supp. 64 (S.D.N.Y.1968); *Stines v. Hertz Corp.,* 22 A.D.2d 823, 254 N.Y. S.2d 903 (1964), *aff'd,* 16 N.Y.2d 605, 261 N.Y. S.2d 59, 209 N.E.2d 105 (1965). *See also Chase Manhattan Bank v. Banque Intra, S.A.,* 274 F.Supp. 496 (S.D.N.Y.1967); *Bard-Parker Co. v. Dictograph Prod. Co.,* 258 App.Div. 638, 640, 17 N.Y.S.2d 588, 591 (1st Dep't 1940).

these matters, defendants inferentially concede that the cement contract and letter of credit were valid and that they attempted unilaterally to impose conditions with respect to advance notice of, and clearance for, vessels' departures contrary to the parties' agreements.

Defendants seek to defeat plaintiff's claim to the attachment by contending that the parties entered into an agreement of compromise on February 6, 1976, whereby they agreed to discharge and release one another from the continuing obligations under the cement contract and letter of credit. Although such an agreement was signed by plaintiff, it was conditioned upon Central Bank paying plaintiff within thirty days for cement already delivered and paying demurrage charges within fourteen days after presentment of the relevant documents. Plaintiff contends that it never received payment for demurrage and accordingly that the release never became effective; defendants contend that the required payments were made.[3] These conflicting contentions present an issue of fact, the resolution of which must await determination upon a trial.[4] A fair reading of the papers and documents establishes evidential support for the essential elements of plaintiff's claim for breach of the cement agreement.[5]

■ Next, Nigeria and Central Bank assert sovereign immunity as a defense. It does not appear that defendants have requested the State Department to recommend that immunity be granted, nor has the State Department done so. The determination of this issue thus rests with the Court. The cement contract was signed by the "Permanent Secretary, Ministry of Defense, Lagos, for and on behalf of the Federal Republic of Nigeria." The contract describes the commodity purchased as "Portland Cement." The Legal Advisor of the Federal Ministry of Justice of Nigeria claims in an affidavit that the cement was for the use of the Nigerian armed services in the construction of military barracks, other military installations and government works projects. The latter, including the building of highways, allegedly would be undertaken by the Ministry of Defense. Nigeria thus seeks to assert sovereign immunity under the branch of the rule established in *Victory Transport, Inc. v. Comisaria General*[6] that confers immunity to foreign governments sued on their "acts concerning the armed forces."[7]

---

**3.** Under New York law, on a motion to vacate an attachment, "[T]he truth of all the facts stated [in the papers in support of the attachment] must be assumed." *United States v. Brown*, 247 N.Y. 211, 217, 160 N.E. 13, 16 (1928).

**4.** Upon the hearing of this motion, oral testimony was received in support of plaintiff's position that payments for demurrage were never made pursuant to the release agreement.

**5.** Plaintiff has also presented evidentiary facts sufficient to form a basis for the computation of damages. *See Usdan v. Dunn Paper Co.*, 392 F.Supp. 953 (E.D.N.Y.1975); *Valentine Dolls, Inc. v. McMillan*, 25 Misc.2d 551, 202 N.Y.S.2d 620 (Sup.Ct.1960). Because plaintiff's evidence concerning the breach of the cement contract and letter of credit, if taken as true, would show that plaintiff was fully justified in treating Nigeria's actions as an anticipatory breach, *see* U.C.C. § 2–601 (McKinney's 1964), plaintiff need not present evidence that it stands ready to perform the remainder of the contract. Nevertheless, plaintiff's affidavits do indicate such a willingness to render performance.

**6.** 336 F.2d 354 (2d Cir.1964), *cert. denied*, 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965).

**7.** *Id.* at 360. Nigeria's Legal Advisor, as well as the Nigerian Ambassador to the United States, seek to extend the defense of sovereign immunity to Central Bank upon averments that the Bank established the letter of credit as a department of the Nigerian government and as the only agent of the government authorized to hold its funds extra-territorially. They assert that the funds in Central Bank's name at Morgan Guaranty belong to the Government of Nigeria and are used only to satisfy obligations of the government abroad. Even if taken to be true, however, these assertions would not automatically render Nigerian funds in Morgan Guaranty immune from attachment. *See Aerotrade, Inc. v. Republic of Haiti*, 376 F.Supp. 1281 (S.D.N.Y.1974); *Aerotrade, Inc. v. Banque Nationale De La Republique D'Haiti*, 376 F.Supp. 1286 (S.D.N.Y.1974); Miller, *Service of Process on State, Local, and Foreign Governments under Rule 4, Federal Rules of Civil Procedure*, 46 F.R.D. 101, 126 (1969). Rather, an attachment should be vacated only if the defendant is entitled to immunity on the underlying claims advanced by the plaintiff.

The plaintiff, in resisting the claim of sovereign immunity, stresses the "intrinsically commercial" nature of the cement contract [8] and the absence in that document and in the letter of credit of any reference to the uses to which the cement was to be put. Plaintiff urges that the fact the agreement was signed by the Ministry of Defense on behalf of the Nigerian Government is irrelevant in deciding whether defendants are entitled to prevail upon their plea of sovereign immunity under the applicable criteria set forth in *Victory Transport.* The Court is inclined to agree that the mere signing of the agreement by the Minister of Defense on behalf of the Government by itself is not determinative of the issue whether Nigeria's entry into the contract was an "act concerning the armed forces." [9] Indeed, plaintiff in effect asserts that the cement was to be used for civilian purposes unrelated to activities of the armed forces. The facts concerning "the nature of the transaction at the time of contracting," [10] which will ultimately control whether the transaction was commercial (jure gestionis) or governmental (jure imperii), are in sharp dispute.[11] Again, the papers do not permit resolution of the controverted issue, and it must await trial.

█ Finally, defendants contend that the action must be dismissed pursuant to Rule 19(b) of the Federal Rules of Civil Procedure because of failure to join an indispensable party, International Trade and Finance Espanalo, S.A. ("Intrafinsa"). After plaintiff had concluded its cement contract with Nigeria and the letter of credit had been established by Central Bank, plaintiff entered into a contract with Intrafinsa under which the latter was to provide it with the cement. Pursuant to their agreement, plaintiff, to secure payment to Intrafinsa, assigned some of its rights under the letter of credit to Intrafinsa, which in turn assigned these rights to National Bank & Trust Company ("Natbank"), the charterer of the vessels that were to transport the cement to Nigeria. The assignments to the respective assignees were partial, and partial assignees are not indispensable parties under Rule 19(b).[12] There is no showing that the absence of Intrafinsa, a Spanish corporation over whom jurisdiction cannot be acquired, will be prejudicial to the defendants. If plaintiff prevails, and upon a showing that assignments of a portion of plaintiff's claim are outstanding, recovery could be limited to such amounts that it would be entitled to under the letter of credit. Such recovery would not affect the rights of Intrafinsa or Natbank and would avoid any possibility of double recovery against the defendants. Moreover, the claim of lack of indispensable parties appears to dissolve, since both partial assignees reassigned all their rights in the letter of credit to plaintiff. The defendants' contention that the reassignment was collusive and thus that the Court is without jurisdiction [13] is denied by plaintiff—thus another issue of fact is presented which does not permit disposition upon the affidavits.

The motion to prove the attachment is sustained and defendants' cross-motion to vacate the attachment is denied.

---

8. *See Pan American Tankers Corp. v. Republic of Vietnam,* 296 F.Supp. 361, 364 (S.D.N.Y. 1969).

9. *Victory Transport, Inc. v. Comisaria General,* 336 F.2d 354, 360 (2d Cir.1964), *cert. denied,* 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965). *See also Aerotrade, Inc. v. Republic of Haiti,* 376 F.Supp. 1281 (S.D.N.Y.1974) (sales of essentially military goods).

10. *Aerotrade, Inc. v. Republic of Haiti,* 376 F.Supp. 1281, 1285 (S.D.N.Y.1974).

11. This at once distinguishes the instant case from the *Aerotrade* case relied upon by defendants, in which there could not have been any doubt that the goods were intended for military use. *See id.*

12. *Resnik v. La Paz Guest Ranch,* 289 F.2d 814 (9th Cir.1961); *Atlantic City v. American Cas. Ins. Co.,* 254 F.Supp. 396 (D.N.J.1966); 3A Moore's Fed.Prac. ¶ 19.14[1], at 2402 (1967).

13. 28 U.S.C. § 1359. *Parties Collusively Joined or Made*

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.