Pier F. TALENTI, Appellant,

v.

William J. CLINTON, as the President of the United States, et al., Appellees.

No. 95–5433.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 1996.

Decided Dec. 20, 1996.

George W. Abbott, pro hac vice, Minden, NV, argued the cause and filed the briefs for appellant. Richard S. Basile, New York City, entered an appearance.

Alisa B. Klein, Attorney, United States Department of Justice, Washington, DC, argued the cause for appellees, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, Mark B. Stern, Attorney, United States Department of Justice, and Ronald J. Bettauer, Assistant Legal Advisor, United States Department of State, were on the brief.

Before: EDWARDS, Chief Judge, WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant seeks to compel the President, the Secretary of State, and the Acting Director of the International Cooperation Agency to withhold federal aid from Italy under the Hickenlooper Amendment to the Foreign Assistance Act, 22 U.S.C. § 2370(e)(1). Appellant also seeks a declaratory judgment that defendants have violated the terms of the Hickenlooper Amendment. In addition, appellant invokes the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706, to compel the defendants to review the merits of his claim. The district court dismissed appellant's case on the grounds that he lacked standing and that the government had not waived sovereign immunity. Because we agree that appellant lacks standing to challenge the President's failure to withhold foreign assistance, we affirm.

## I.

For purposes of ruling on the government's motion to dismiss for want of standing

we accept as true all material allegations of the complaint. *Metropolitan Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264, 111 S.Ct. 2298, 2305, 115 L.Ed.2d 236 (1991). Appellant, Pier Talenti, is an Italian-born, naturalized United States citizen. In 1974, Talenti was charged in Italy, along with members of the United States government, in connection with the so-called "Borghese Coup" to overthrow the Italian government. Although charges were eventually dropped, Talenti did not return to Italy for almost seven years for fear of arrest.

From 1974 until 1985, the Italian government rezoned and expropriated millions of dollars worth of property owned or controlled by Talenti. For example, Salone, the Talenti family farm in Rome, was rezoned from "residential" to "parkland" preventing further development of the property. While Talenti received some compensation for the expropriations, he claims that the compensation was not "just and effective" as required by the Treaty of Friendship, Commerce and Navigation between the United States and Italy ("FCN Treaty"), February 2, 1948, U.S.-Italy, art. V, 63 Stat. 2255, and as reflected in customary international law.

Beginning in 1975, Talenti sought support from the State Department in negotiating a diplomatic resolution of his dispute. According to Talenti, several secretaries of state contacted the United States Embassy in Rome to suggest that a diplomatic note be forwarded to the Italian government on his behalf. Evidently, the Embassy repeatedly declined to dispatch the letters. In 1983, Talenti brought an action in Italian court seeking further compensation for the rezoned and expropriated property. The Italian court denied relief in 1987. After unsuccessfully seeking review with an intermediate appellate court, Talenti filed an appeal in 1992 with the final appellate court in Italy, the Court of Cassation. In July 1994, the Court of Cassation denied his appeal. The United States Embassy in Rome did not forward a formal demarche to the Italian government until August 1996. The letter, titled Diplomatic Note 674, cited Article V of the FCN Treaty and requested that Italy negotiate a resolution of Talenti's claim.

Several months after Talenti filed his appeal with the Court of Cassation he filed this action in United States District Court. Talenti seeks to force the President, the Secretary of State, and the Acting Director of the International Cooperation Agency to withhold federal funds from Italy under the Hickenlooper Amendment to the Foreign Assistance Act, 22 U.S.C. § 2370(e)(1).[1] In addition, Talenti seeks a declaratory judgment that defendants have breached their obligations under the Hickenlooper Amendment.

The district court dismissed Talenti's request for mandamus on the grounds that Talenti lacked standing to challenge the President's inaction and that the government had not waived sovereign immunity. The district court also dismissed Talenti's request for declaratory judgment, holding that this remedy is inappropriate where the declaratory judgment action is simply the duplication of another claim. We agree that Talenti lacks standing and affirm the judgment of the district court.

## II.

As an initial matter, we hold that Talenti's claim is governed not by the Hickenlooper Amendment as cited in his complaint and in the district court opinion, but by the Helms Amendment to the Foreign Relations Authorization Act, 22 U.S.C. § 2370a. The Helms Amendment, which superseded the Hickenlooper Amendment shortly after Talenti filed this action, provides in relevant part:

(a) Prohibition

None of the funds made available to carry out this Act, the Foreign Assistance Act of 1961 [22 U.S.C.A. 2151 et seq.], or the Arms Export Control Act [22 U.S.C.A. 2751 et seq.] may be provided to a government or any agency or instrumentality thereof, if the government of such country

---

1. The Hickenlooper Amendment was superseded, after the filing of this action, by the Helms Amendment to the Foreign Relations Authorization Act. 22 U.S.C. § 2370a. As we discuss below, the Helms Amendment, rather than Hickenlooper, governs Talenti's claim.

(other than a country described in subsection (d) of this section)—

(1) has on or after January 1, 1956—

(A) nationalized or expropriated the property of any United States person,

(B) repudiated or nullified any contract with any United States person, or

(C) taken any other action (such as the imposition of discriminatory taxes or other exactions) which has the effect of seizing ownership or control of the property of any United States person, and

(2) has not, within the period specified in subsection (c) of this section, either—

(A) returned the property,

(B) provided adequate and effective compensation for such property in convertible foreign exchange or other mutually acceptable compensation equivalent to the full value thereof, as required by international law,

(C) offered a domestic procedure providing prompt, adequate and effective compensation in accordance with international law, or

(D) submitted the dispute to arbitration under the rules of the Convention for the Settlement of Investment Disputes or other mutually agreeable binding international arbitration procedure.

\*　　\*　　\*　　\*　　\*　　\*

(g) Waiver

The President may waive the prohibitions in subsections (a) and (b) of this section for a country, on an annual basis, if the President determines and so notifies Congress that it is in the national interest to do so.

(h) Definitions

For the purpose of this section, the term "United States person" means a United States citizen or corporation, partnership,

or association at least 50 percent beneficially owned by United States citizens.

22 U.S.C. § 2370a.

■ A statute presumptively applies only to post-enactment conduct. *Gersman v. Group Health Assoc., Inc.,* 975 F.2d 886, 897 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1642, 128 L.Ed.2d 363 (1994). Therefore, in the absence of a contrary congressional intent the Hickenlooper Amendment would apply to Talenti's claim. However, the language in the Helms Amendment is clear that it applies retroactively to any expropriation after January 1, 1956. 22 U.S.C. § 2370a(a)(1). Accordingly, although the Hickenlooper Amendment applied at the time of the expropriations, the Helms Amendment will govern this Court's review of Talenti's claim.

### III.

■ Having held that the Helms Amendment applies to Talenti's claim, we turn to the question of standing. The case and controversy requirement of Article III limits the role of the federal judiciary to resolving "Cases" and "Controversies." Art. III, § 2. The doctrine of standing is an "essential and unchanging" component of this Article III requirement. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). In order to establish standing, a litigant must demonstrate an injury in fact that is fairly traceable to the challenged action of the defendant, and not the result of action by some third party not before the court. *Id.*

■ The party asserting standing must also show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561, 112 S.Ct. at 2136 (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976)). Fastidious commitment to these requirements ensures that the federal judicial power is exercised only when the dispute is amenable to judicial resolution. *See Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 218, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974).

■ The district court held that Talenti lacked standing because his injury, the expropriation and rezoning of his property without just and effective compensation, would not be redressed by a decision in his favor by this Court. We agree. It is "mere speculation" to assume that a judgment in Talenti's favor would at all ameliorate Talenti's injury.

When the plaintiff is not himself subject to the challenged government action or inaction, it is "substantially more difficult" to establish redressability. *Lujan*, 504 U.S. at 562, 112 S.Ct. at 2137. In such cases, the court's ability to redress the injury "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989) (opinion of Kennedy, J.). Redressability is particularly problematic when the only challenged action is the failure of the Executive Branch to impose penalties upon a third party. *Branton v. F.C.C.*, 993 F.2d 906, 910–11 (D.C.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994). For example, in *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (cited in *Branton*, 993 F.2d at 911), the Court held that a parent does not have standing to compel the use of a criminal child support statute against the other parent. The Court stated: "[I]f appellant were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative." *Id.* at 618, 93 S.Ct. at 1149.

In *Branton*, we considered a radio listener's challenge to the FCC's failure to sanction a network for using obscene language. We held that the listener lacked standing because it was conjectural whether radio stations would respond to sanctions by broadcasting fewer indecencies. We thought it equally plausible that the stations would decide that the benefits of broadcasting indecencies outweighed the burden of the government fines. 993 F.2d at 911.

Likewise, it is not only speculative, but indeed doubtful whether action under the Helms Amendment would alleviate Talenti's injury. First, the Helms Amendment does not require that aid against Italy be suspended. The Helms Amendment states in relevant part that:

> The President may waive the prohibitions in subsections (a) and (b) of this section for a country, on an annual basis, if the President determines and so notifies Congress that it is in the national interest to do so.

22 U.S.C. § 2370a(g). Because the statute confides authority to waive its provisions if the President finds waiver in the national interest, the most Talenti can demand is a certification from the President to Congress of his decision to continue providing foreign aid. In fact, of the many foreign expropriations of American property, the Executive Branch opted to withhold aid under the Hickenlooper Amendment only twice in the Amendment's thirty-four year history. *See* Christopher N. Camponovo, Comment, *Dispute Settlement and the OECD Multilateral Agreement on Investment*, 1 UCLA J. INT'L L. & FOREIGN AFF. 181, 202 (1996).

The improbability of a decision to suspend aid to Italy is especially apparent given the nature of the aid received by Italy. The government asserts, and Talenti concedes, that Italy receives no direct financial assistance from the United States. Talenti contends, however, that Italy receives indirect assistance through the North Atlantic Treaty Organization ("NATO"), through the use of United States military bases in Italy, and as part of the Defense Authorization Act. The only foreign aid affected by the Helms Amendment is funding provided under the Foreign Relations Authorization Act, the Foreign Assistance Act of 1961, or the Arms Export Control Act. Even assuming that the sources of funding cited by Talenti are provided under these Acts, the nature and purposes of military funding suggest that the President may find the continuation of funding to be in the national interest.

Talenti argues that, even assuming the President files a waiver with Congress, the waiver would redress his injury by bringing his claim to the highest diplomatic channels

in the State Department and by publicizing the Italian expropriations. However, Talenti's alleged injury is not a lack of publication but a lack of compensation. Providing the one does not redress the lack of the other. Talenti cannot demonstrate that congressional notification will cause the Italian government to compensate him for the expropriations. *See Aerotrade, Inc. v. Agency for Int'l Dev., Dep't of State*, 387 F.Supp. 974, 975–76 (D.D.C.1974). By Talenti's own admission, his case has already received attention from the highest diplomatic channels and is a matter of public record here and in Italy. Publication has not produced, nor is it likely to produce, any further action with respect to his claim.

Even the improbable scenario of a decision to withhold assistance from Italy does not redress Talenti's injury. As one court has noted, there is "considerable uncertainty as to whether such action would aid plaintiff in collecting its debt or would tend to drive [the foreign government] into even greater intransigence." *Aerotrade*, 387 F.Supp. at 975. In order to find standing, we would have to assume that the Italian government would respond to the suspension of aid by negotiating a resolution of Talenti's claim. We have no reason to think a foreign government would be so inclined. The suspension of foreign assistance is a contentious act that may threaten diplomatic relations and undermine American influence abroad. It seems equally plausible that a foreign government would find it in the country's long-term interest to forego American aid to save face. In any case, "[a] court is rightly reluctant to enter a judgment which may have no real consequence, depending on the putative cost-benefit analyses of third-parties over whom it has no jurisdiction and about whom it has almost no information." *Branton*, 993 F.2d at 912.

Talenti claims that his standing to bring a challenge to the inaction of the Executive Branch is established by the Supreme Court's opinion in *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986). In that case, wildlife conservation groups sought to compel the Secretary of Commerce to certify that Japan was conducting fishing operations in violation of international whaling agreements. Such a certification would have required the Executive Branch to impose economic sanctions against Japan. Rejecting challenges to justiciability, the Court reached the merits of the claim and held that the statute did not mandate certification.

We hold that *Japan Whaling* is readily distinguishable. In that case, once the Secretary of Commerce made the requested certification, the Secretary of State was mandated to sanction the offending nation by halving its allocation within the United States' fishery conservation zone. *Id.* at 226, 106 S.Ct. at 2863. There was, in addition, a track record suggesting that the threat of sanctions would compel compliance with the whaling agreements. Violations of the whaling agreements had been certified on five separate occasions—each under a prior law making the imposition of sanctions discretionary. On each occasion the threat of sanctions had caused the offending nations to conform their fishing operations. *Id.* at 225, 106 S.Ct. at 2863.

In this case, as mentioned, the requested order would not mandate Executive Branch action against Italy. Moreover, there is no track record suggesting that foreign expropriators would readily relent in the face of the Helms Amendment.

For these reasons, we cannot conclude that action by the Executive Branch under the Helms Amendment is likely to redress Talenti's injury.

## Conclusion

For the foregoing reasons, we conclude that Talenti does not have standing to bring his claim and affirm the order of the District Court.

*So ordered.*