**Jill JULIAN, Plaintiff,**

v.

**EQUIFAX CHECK SERVICES, INC.,**
**Defendant (Two Cases).**

**Nos. 3:95–CV–1096 CFD,**
**3:95–CV–1097 CFD.**

United States District Court,
D. Connecticut.

Feb. 12, 1998.

Joanne Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, for plaintiff.

Patricia J. Campanella, Robinson & Cole L.L.P., Hartford, CT, David L. Hartsell, Kilpatrick, Stockton L.L.P., Atlanta, GA, for defendant.

### RULING ON PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff has filed a motion for partial summary judgment in each of these consolidated actions. For the reasons set forth below, both motions are denied.

## I. BACKGROUND

The complaints in these actions were filed on June 12, 1995, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et seq.*[1] On November 30, 1995, the court issued a case management order in each case which adopted the pretrial deadlines agreed to by both parties and set forth in their Federal Rule of Civil Procedure (hereinafter "Federal Rule") 26(f) reports. In both orders, the parties were required to file all dispositive motions on or before April 30, 1996.

The plaintiff filed both pending motions for partial summary judgment on July 28, 1997, fifteen months after the filing deadline. The plaintiff did not request permission to file the motions beyond the time prescribed in the scheduling order. In response to the plaintiff's motions, the defendant moved to strike them as untimely. On December 12, 1997, the court heard argument on whether it

---

1. A third action, *Julian v. Equifax Check Services. Inc.*, No. 3:95–CV–1098, ("*Julian III*") was also filed on June 12, 1995. These cases arise from the defendant's efforts to collect on different checks issued by the plaintiff to various retailers over a two-day period in May, 1994. Each action involves a separate check. The two cases here were consolidated by order of the court on February 9, 1996, while *Julian III* was left to proceed independently.

should consider the plaintiff's motions for partial summary judgment.

In support of her position that the court should consider the two motions, the plaintiff relies on language in Federal Rule 56, which states that a party may move for summary judgment "*at any time* after the expiration of 20 days from the commencement of the action...." Fed.R.Civ.P. 56 (emphasis added). The plaintiff also relies on two Second Circuit decisions, *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 39 (2d Cir.1995) and *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987), to support her argument that a local rule cannot preclude a party from filing a motion "otherwise permitted under the Federal Rules of Civil Procedure."[2] Finally, the plaintiff maintains that 28 U.S.C. § 2071(a) requires local court rules to be consistent with the Federal Rules and concludes "when [Federal] Rule 56 allows a party to file summary judgment 'at any time,' the local rules are inconsistent in imposing a time limitation" since scheduling orders issued pursuant to the local rules limit the time for filing such motions.[3]

2. The plaintiff also cites to an unreported ruling from this district, *Artese v. Wood*, No. 3:95–CV–582 (PCD) (D.Conn. March 26, 1997) (ruling on defendant's motion for summary judgment), in support of her argument that the scheduling orders cannot preclude a party from filing a summary judgment motion under Federal Rule 56. That ruling, however, was vacated by the court. *Artese v. Wood*, No. 3:95–CV–582 (PCD) (D.Conn. May 7, 1997) (ruling on plaintiff's motion for reconsideration).

3. These arguments are set forth in the Plaintiff's Supplemental Opposition to Motion to Strike, which was filed in a separate action pending before this court, *Woodward v. Equifax, Check Services Inc.*, No. 3:96–CV–0139(CFD). In the *Woodward* action, the plaintiffs, who are represented by the same counsel as the plaintiff in these actions, are also seeking to have the court consider a motion for partial summary judgment filed after the scheduling deadline expired. The court heard argument on all of these matters on December 12, 1997, and requested additional briefs from the plaintiffs' counsel. Although the plaintiffs' supplemental brief was only filed in *Woodward*, the court will consider the arguments made in that brief here as well.

4. Local Rule 11(a)(2) provides, in pertinent part:
 Within one hundred twenty (120) days of the filing of the complaint, the Judge to whom the

## II. *DISCUSSION AND OPINION*

### A. Scheduling Orders and Federal Rule 56

Local Rules of Civil Procedure (hereinafter "Local Rules") 11(a)(2)[4] and 38[5] set forth the procedures for establishing scheduling orders in civil actions in the District of Connecticut. These Local Rules were adopted to effectuate the mandate of Federal Rule 16(b), which requires the district courts to enter scheduling orders. Federal Rule 16(b) provides:

> Except in categories of actions exempted by district court rule as inappropriate, the district judge ... shall, after receiving the report from the parties under Rule 26(f) or after consulting with the attorneys for the parties ... enter a scheduling order that limits the time
>
> (1) to join other parties and to amend the pleadings;
>
> (2) to file motions; and
>
> (3) to complete discovery.
>
> . . . .

case has been assigned ... shall enter a scheduling order that limits the time:
 (i) to join other parties and to amend pleadings;
 (ii) to file and hear motions; and
 (iii) to complete discovery.
 The scheduling order may also include the date or dates for further status conferences, a final settlement conference, and trial; and other matters appropriate in the circumstances of the particular case. Such scheduling order shall not be modified except by leave of Court on a showing of good cause.
D.Conn.Loc.R.Civ.P. 11(a)(2).

5. Local Rule 38 provides, in pertinent part:
 (a) Within thirty days after the appearance of any defendant, the attorneys of record and any unrepresented parties who have appeared in the case shall confer for the purposes described in Fed.R.Civ.P. 26(f).... Within ten days after the conference, the participants shall jointly complete and file a report in the form prescribed by Form 26(f), which appears in the Appendix to these Rules. A copy of the report shall be mailed to the chambers of the presiding Judge.
 (b) After the parties' report is filed, the Court will issue a written scheduling order pursuant to Fed.R.Civ.P. 16(b).
D.Conn.Loc.R.Civ.P. 38(a)(b).

... A schedule shall not be modified except upon a showing of good cause and by leave of the district judge.... [6]

Fed.R.Civ.P. 16(b). As is clear from their text, Local Rules 11(a)(2) and 38 are entirely consistent with Federal Rule 16(b). Thus, the plaintiff's challenge is really to Federal Rule 16(b).

To properly consider the plaintiff's argument, a review of the purposes and operation of the Federal and Local Rules concerning pre-trial scheduling orders is important. Under Federal Rule 26(f) and Local Rule 38, the parties are required to meet and discuss the discovery and motions necessary for their case and how these matters can be accomplished in an efficient, timely and cost-effective manner. *See* Fed.R.Civ.P. 26, Advisory Committee Notes, Subdivision (f) (1993 Amendment). They then submit their report (known as the "26(f) report"), which sets forth a proposed pre-trial schedule. Finally, the court uses their 26(f) report as a guide to set reasonable deadlines in a scheduling order for the joining of parties, amending the pleadings, filing motions, and completing discovery. *See* Fed.R.Civ.P. 16(b); D.Conn. Loc.R.Civ.P. 11(a)(2) & 38(b); *see also* Fed. R.Civ.P. 16, Advisory Committee Notes, Subdivision (b) (1983 Amendment) ("In order to formulate a practicable scheduling order, the judge ... and attorneys are required to develop a timetable for the matters listed in Rule 16(b)(1)–(3)."). In this respect, Federal Rules 16(b) and 26(f) and Local Rules 11(a) and 38 are intended to afford the parties sufficient opportunity to prepare their cases.

Federal Rules 16(b) and 26(f) and Local Rules 11(a) and 38 also help the district court control its docket and provide for a timely resolution of disputes. Through the use of these scheduling orders, the district court is able to more effectively manage all of its cases. *See, e.g., Molokai Chamber of Commerce v. Kukui (Molokai), Inc.,* 161 F.R.D. 426, 428 (D.Haw.1995) ("These scheduling orders not only are required by the civil rules, but they are also essential to the orderly functioning of the court, insuring oversight by the court and a timetable for the major events in the litigation process.").

The ability of the district court to control its docket is especially important given the increase in both the number and complexity of cases it must oversee and decide. In 1983, the federal rules advisory committee recognized that there had been significant changes in federal civil litigation since the Federal Rules were adopted in 1938. Fed.R.Civ.P. 16, Advisory Committee Notes (1983 Amendment). In light of these changes, Federal Rule 16 was extensively rewritten and expanded to meet the challenges of modern litigation. The case management tools of Federal Rule 16, added in 1983, were expressly designed to enable the district courts to better manage their expanding dockets. The need for these tools is even greater today.[7]

The plaintiff argues that the language of Federal Rule 56, which states that a claimant

**6.** In the District of Connecticut, the following categories of cases are exempted from the scheduling order requirements of Federal Rule 16(b): prisoner petitions, review of decisions by administrative agencies including Social Security, recovery of defaulted student loans, recovery of overpayment of veterans' benefits, forfeiture actions, petitions to quash Internal Revenue Service summons, appeals from Bankruptcy Court orders, proceedings to compel arbitration or to confirm or set aside arbitration awards and Freedom of Information Act cases. D.Conn.Loc. R.Civ.P. 11(a)(2) and 38(c).

**7.** Chief Justice Rehnquist recently described the burgeoning dockets of the district courts in his 1997 year-end report of the federal judiciary and observed that,

> [w]ith regard to the ... problems currently troubling the federal Judiciary, most are directly related to its large and expanding work-

load.... Unless steps are taken ... the demands placed on the federal Judiciary will eventually outstrip its resources....

William H. Rehnquist, The 1997 Year–End Report of the Federal Judiciary, The Third Branch (Admin. Off. of the U.S. Cts., Washington, D.C.), Jan. 1998, at 2; *see also Widhelm v. Wal–Mart Stores, Inc.,* 162 F.R.D. 591, 593 (D.Neb.1995) ("Scheduling orders have become increasingly critical to the district court's case management responsibilities because '[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars.'" (citation omitted)). The number of civil cases commenced per year in the district courts has increased from 34,734 in 1940 to 239,013 in 1995 and annual district court filings per judgeship have increased from 317 to 436 between 1970 and 1995. Judicial Conference of the United States, Long Range Plan for the Federal Courts 10, 15 tbl. 3 (1995).

may move for summary judgment "at any time," allows her to file her motions for partial summary judgment and overrides the deadlines set forth in the scheduling orders issued pursuant to Federal Rule 16(b). This argument, however, is inconsistent with basic principles of statutory construction, the purposes of Federal Rule 16(b), and the intent of the Supreme Court in adopting Federal Rule 16(b).

 The principles of statutory interpretation which are relevant to the analysis of Federal Rules 16(b) and 56 are the following:

> It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes. Thus, they all should be construed together. The rule that legislative provisions which are in pari materia should be construed together applies also to rules of court.

2B Norman J. Singer, Sutherland's Statutes and Statutory Construction § 51.02 (5th ed. 1992) [hereinafter Sutherland's].

The "at any time" language in Federal Rule 56 has been included in its text since the Federal Rules were first enacted in 1938. Fed.R.Civ.P. 56, Advisory Committee Notes (1937 Adoption). The provision in Federal Rule 16(b) which orders district courts to limit the time for parties to file motions was adopted when the Supreme Court amended Federal Rule 16 in 1983. Fed.R.Civ.P. 16, Advisory Committee Notes, Subdivision (b) (1983 Amendment). This court concludes that when the Supreme Court amended Federal Rule 16(b), it was aware Federal Rule 56 stated that summary judgment motions could be filed "at any time" and that it intended both rules to work together.

The notes of the advisory committee also show that all pretrial motions, including mo-

tions for summary judgment, were intended to be subject to the amendment of Federal Rule 16(b). When Federal Rule 16(b) was amended in 1983, the advisory committee noted that cases were disposed of more efficiently and with less cost "when a trial judge intervene[d] personally at an early stage to assume judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps...." Fed. R.Civ.P. 16, Advisory Committee Notes, Introduction (1983 Amendment). The filing of a summary judgment motion has always been considered a principal pretrial step. When Federal Rule 56 was adopted, the advisory committee notes indicate that it was intended to "appl[y] to all actions" and summary judgment motions were viewed as a useful "method for promptly disposing of [certain] actions...." Fed.R.Civ.P. 56, Advisory Committee Notes (1937 Adoption). Summary judgment motions are often the most significant pretrial matters and are typically the most time-consuming motions considered by the district courts. Imposing reasonable limits on when they may be filed, therefore, is critical for the scheduling of trial in individual cases and for the management of the entire docket, which were the goals behind the amendment of Federal Rule 16.[8]

As mentioned above, statutes *in pari materia* (those that relate to the same subject) are to be construed together, if possible, to give effect to the purpose of each statute. Sutherland's, *supra; see also United States v. Fausto*, 484 U.S. 439, 453, 108 S.Ct. 668, 676, 98 L.Ed.2d 830 (1988) ("Th[e] classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implication of a statute may be altered by the implications of a later statute."); *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) ("The courts are not at liberty to pick and choose among congressional enactments, and

---

8. Federal Rule 16(b) authorizes district courts to modify the time limits set forth in the scheduling order upon a showing of good cause. The Supreme Court chose the "good cause" standard over a "manifest injustice" or "substantial hard-

ship" test in order to give district courts more flexibility to permit late-filed motions when appropriate. Fed.R.Civ.P. 16, Advisory Committee Notes, Subdivision (b) (1993 Amendment).

when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."); *cf. Maybin v. Northside Correctional Ctr.*, 891 F.2d 72, 74 (4th Cir.1989) ("Rules of civil procedure must be considered in relation to one another and construed together."); *Nasser v. Isthmian Lines*, 331 F.2d 124, 127 (2d Cir.1964) ("[I]t is essential that we recognize that the [Federal] Rules were intended to embody a unitary concept of efficient and meaningful judicial procedure, and that no single [Federal] Rule can consequently be considered in a vacuum."). The plaintiff's argument is inconsistent with these principles in that it would not allow Federal Rules 16(b) and 56 to work together.

■ The better interpretation of Federal Rule 16(b) and 56 is that a party may file a motion for summary judgment "at any time" until the time limit for filing motions under a district court's Federal Rule 16(b) scheduling order expires. This approach is consistent with other decisions holding that Federal Rule 16(b) requires courts to set and enforce deadlines for the filing of summary judgment motions. *See, e.g., Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir.1988), *Kennedy v. City of Cleveland*, 797 F.2d 297, 301 & n. 6 (6th Cir.1986); *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir.1985); *Chiropractic Alliance of New Jersey v. Parisi*, 164 F.R.D. 618, 621–22 (D.N.J.1996); *Tyler v. City of Manhattan*, 849 F.Supp. 1429, 1434 (D.Kan.1994), *Bradford v. State of Hawaii*, 846 F.Supp. 1411, 1415 (D.Haw.1994); *Kinberg v. Colorforms*, Nos. 89 Civ. 1156 & 89 Civ. 1292, 1991 WL 285621, at *3–4 (S.D.N.Y.1991); *Busse v. Gelco Express Corp.*, 678 F.Supp. 1398, 1402–03 (E.D.Wis.1988).

The plaintiff also relies on *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 39 (2d Cir.1995), and *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987), for her argument that the district court cannot preclude the filing of a summary judgment motion after the time has passed for doing so under a scheduling order. In those cases, however, the Second Circuit considered the practice undertaken by some district judges of requiring parties to attend a conference prior to the filing of certain motions and then, at the conference, denying the parties permission to file their motions. The purpose of the conferences was to discourage the filing of frivolous motions. The Second Circuit held that while it is well within a district judge's discretion to hold a conference prior to the filing of motions, the judge cannot use the conference as a means to prevent a party from filing any motion otherwise allowed under the Federal Rules. *Milltex*, 55 F.3d at 39, *Richardson Greenshields Securities*, 825 F.2d at 652. They do not hold that scheduling orders which set forth a reasonable time period for the filing of such motions violate the Federal Rules.

■ Finally, the plaintiff points to 28 U.S.C. § 2071(a). Section 2071(a) requires that local rules adopted by district courts for the conduct of their business shall be consistent with Acts of Congress and the Federal Rules, which are prescribed by the Supreme Court pursuant to 28 U.S.C. § 2072 (1997). The plaintiff's reliance on this statute, however, is equally unavailing since, as previously shown, Local Rules 11(a)(2) and 38 are entirely consistent with Fed.R.Civ.P. 16(b) and, therefore, comply with the requirements of section 2071(a).

An argument similar to the plaintiff's was made in *Forstmann v. Culp*, 114 F.R.D. 83 (M.D.N.C.1987). The plaintiff in *Forstmann* asked to amend his complaint more than one year after the time for doing so had passed under the scheduling order. The plaintiff offered no reason for modifying the scheduling order—no "good cause." Instead, he relied on Federal Rule 15, which states that the district court shall "freely give" amendments, and decisions which held that "delay alone" in moving to amend is an insufficient reason for a court to deny leave to amend. *Id.* at 85. In holding that the "good cause" requirement of Federal Rule 16(b) must be satisfied, the court undertook an analysis similar to this court's analysis of the plaintiff's Federal Rule 56 argument. The court stated:

The Supreme Court extensively amended Federal Rule of Civil Procedure 16 in 1983. The most significant change to Rule

16 was the mandatory scheduling order described in Rule 16(b). As presently written, Rule 16(b)(1) requires a trial court to enter an order that limits the time for amendments to the pleadings. The Advisory Committee on Rules suggested that early judicial control over modern litigation, including the scheduling of dates for the completion of pretrial steps by the parties, is desirable because cases will then be "disposed of by settlement or trial more efficiently and with less cost and delay than when parties are left to their own devices." Fed.R.Civ.P. 16, Notes of Advisory Committee on Rules. This court cannot conclude that the Supreme Court would promulgate this amendment to Rule 16 with the accompanying rationale if the Court intended that litigants could invoke the language of Rule 15 and thereby circumvent completely the newly enacted amendment. The scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D.Me.1985).

*Id.* at 85.[9]

The same logic is applicable here. The Supreme Court did not intend Federal Rule 16(b)(2) to be ignored when a party filing a summary judgment motion invokes the "at any time" language of Federal Rule 56. The "at any time" provision of Federal Rule 56 for filing summary judgment motions must be interpreted to be subject to the case management dictates of Federal Rule 16(b).

### B. Good Cause

■ Under Federal Rule 16(b), the district court may modify a pre-trial scheduling order on a showing of "good cause" by the party seeking the modification. Fed.R.Civ.P. 16(b); *see also* D.Conn.Loc.R.Civ.P. 11(a)(2). "Good cause" means that the schedule cannot reasonably be met despite that party's diligence. Fed.R.Civ.P. 16 Advisory Committee Notes, Subdivision (b) (1983 Amendment);

*see Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439, 446–47 (W.D.N.Y.1997). *Robinson v. Town of Colonie*, No. 91–CV–1355, 1993 WL 191166, at *3 (N.D.N.Y. June 3, 1993). Therefore, the plaintiff must demonstrate that there is "good cause" to modify the April 30, 1996 deadlines established in the scheduling orders for this court to consider her motions for partial summary judgment at this time.

■ "The focus of an inquiry into 'good cause' is on the [requesting] party's reasons for the [schedule] modification." *See Gavenda v. Orleans County*, No. 95–CV–0251E(SC), 1996 WL 377091, at *2 (W.D.N.Y. June 19, 1996). The plaintiff has failed to demonstrate any good cause for such a modification. In fact, the plaintiff has offered no reason for the court to modify the existing scheduling orders. Instead, the plaintiff relies solely on her argument that the language in Federal Rule 56 allows a party to file a motion for summary judgment "at any time," regardless of filing deadlines. Notwithstanding the plaintiff's failure to address the good cause requirement of Federal Rule 16, the court will review the record to determine whether good cause exists to modify the scheduling orders.

One factor which weighs against a finding of good cause to modify the scheduling order is that the plaintiff did file a timely motion for partial summary judgment in *Julian III* on April 26, 1996, (within the time period allowed for filing such motions under the scheduling orders in these actions), using many of the same arguments she puts forth in her pending motions for partial summary judgment. It thus appears that the plaintiff could have filed the pending motions for partial summary judgment at the same time as the motion in *Julian III*. Also, the plaintiff's counsel acknowledged during oral argument that the facts upon which the motions are based were available and known to the plaintiff prior to the April 30, 1996, motion filing deadline.

---

**9.** The Federal Rule 16(b) issue in *Forstmann* had a more significant impact on the plaintiff's substantive claims. In *Forstmann*, where the request was to amend the complaint to assert new causes of action, the plaintiff's ability to assert claims against the defendants was denied. Here, the Federal Rule 16(b) issue concerns whether the plaintiff will have her claims against the defendants decided now, through her motions for partial summary judgment, or later, at trial.

The plaintiff's counsel also asserted at oral argument that the proposed motions for partial summary judgment rely on new case law which was not available until after the April 30, 1996, filing deadline. The decisions referred to by the plaintiff, however, only relate to one of the defendant's affirmative defenses in this case. Even if this court found that these cases are relevant to this affirmative defense, they are not relevant to the plaintiff's motions for partial summary judgment. Moreover, at this stage of the litigation, with discovery long since completed and the cases on the verge of trial, consideration of the motions for partial summary judgment could cause significant delay in these matters and prevent their timely resolution.

## III. CONCLUSION

For the aforementioned reasons, the "good cause" necessary for the court to modify the scheduling orders to consider the plaintiff's motions for partial summary is not present in this case. Accordingly, the plaintiff's motions for partial summary judgment (docs. # 83 and 86) are DENIED.