**BETTEROADS ASPHALT CORP., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. Civ. 99–1472(JR).**

United States District Court, D. Puerto Rico.

July 3, 2000.

---

Herman Cestero Rodriguez, San Juan, PR, for plaintiff.

Stephen F. Rosenthal, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Lilliam E. Mendoza Toro, U.S. Attorney's Office, Civil Division, Hato Rey, PR, for defendants.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION

Before the Court are Defendants' Motion to Dismiss (**docket No. 8**), Plaintiff's Opposition (docket No. 12), and Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss (docket No. 13). Plaintiff Betteroads Asphalt Corporation ("Betteroads") seeks a writ of mandamus against the United States of America, the President of the United States, the Secretary of State, and the United States Executive Directors of the International Bank for Reconstruction and Development ("World Bank"), the International Development Association ("IDA"), and the Inter–American Development Bank ("IDB") to compel the enforcement of the González and Hickenlooper Amendments to the Foreign Assistance Act, 22 U.S.C. §§ 283r, 284j, 2370(c), against the Government of the Dominican Republic.

Plaintiff alleges in the Complaint that it is an American-owned corporation which holds a fifty percent ownership interest in a consortium that contracted with the Government of the Dominican Republic to perform construction and paving work there. Plaintiff states that under the contract, the Government of the Dominican Republic was to pay Plaintiff RD\$32,065,752.50, or approximately US\$2 million. Plaintiff alleges that it has fulfilled its part of the bargain by performing the contracted-for construction and paving work at the Barahona International Airport and other locations in the Barahona province of the Dominican Republic. According to Plaintiff, the Government of the Dominican Republic reneged on the contract, and has steadfastly refused to honor its debt to Plaintiff, despite acknowledging the same. Plaintiff seeks a judgment from this Court directing Defendants to enforce the González and Hickenlooper Amendments so that Plaintiff may enjoy the protections established therein to assist American corporations in recuperating debts owed to them by foreign governments.

Defendants advance four grounds for the dismissal of Plaintiff's claim. First, Defendants argue that Plaintiff lacks

standing, and therefore the dispute does not present a case or controversy under Article III, section 2 of the United States Constitution. Second, because decisions concerning foreign assistance are inherently political, Defendants contend that jurisdiction is precluded by the political question doctrine. Third, Defendants assert that Plaintiff has not satisfied the requirements for mandamus relief. Finally, Defendants argue that the statutory provisions pursuant to which Plaintiff seeks relief do not create privately enforceable rights. Because the Court agrees that Plaintiffs have not satisfied the standing requirements, the Court hereby **GRANTS** Defendants' motion to dismiss. In light of this holding, the Court limits its discussion to the issue of standing.

## II. LEGAL STANDARD

█ In ruling on a motion to dismiss for want of standing, the Court must accept as true all material allegations of the complaint. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of proof and persuasion as to the existence of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990). As the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof...." *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. At the pleading stage, however, "general allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 560, 112 S.Ct. at 2137 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990)). Because this motion

to dismiss is premised on a defect in subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may "consider any material outside the pleadings submitted by the pleader and the movant." *Hodgdon v. United States*, 919 F.Supp. 37, 38 (D.Me. 1996).

## III. STATUTORY BACKGROUND

█ As a preliminary matter, the parties disagree whether the González and Hickenlooper Amendments enjoy continued vitality or whether, to the contrary, they have been superseded by the Helms Amendment to the Foreign Assistance Act. The significance of the applicable law resides in the fact that the González and Hickenlooper Amendments comprehend a mandatory duty to suspend foreign assistance to a Government meeting certain criteria, whereas the Helms Amendment contains a national interest waiver provision which transforms that duty into a discretionary one. *See* 22 U.S.C. § 2370a. It has been recognized that the Hickenlooper Amendment was superseded by the Helms Amendment. *See Talenti v. Clinton*, 102 F.3d 573, 575–76 (D.C.Cir.1996). Plaintiff has not presented this Court with any compelling argument for parting ways with the U.S. Circuit Court of Appeals for the District of Columbia on this issue. With respect to the González Amendment, however, no court has yet addressed whether it, too, was superseded by the Helms Amendment.

The González Amendment, codified at 22 U.S.C. §§ 283r, 284j, provides that the President is to instruct the United States Executive Directors of the multilateral lending institutions to vote against providing loans or other assistance to countries that have violated certain conditions. Section 283r provides:

The President shall instruct the United States Executive Director of the [Inter–American Development] Bank to vote against any loan or other utilization of

the funds of the Bank for the benefit of any country which has—

(1) nationalized or expropriated or seized ownership or control of property owned by any United States citizen or by any corporation, partnership, or association not less than 50 per centum of which is beneficially owned by United States citizens;

(2) taken steps to repudiate or nullify existing contracts or agreements with any United States citizen or any corporation, partnership, or association not less than 50 per centum of which is beneficially owned by United States citizens; or

(3) imposed or enforced discriminatory taxes or other exactions, or restrictive maintenance or operational conditions, or has taken other actions, which have the effect of nationalizing, expropriating, or otherwise seizing ownership or control of property so owned;

unless the President determines that (A) an arrangement for prompt, adequate, and effective compensation has been made, (B) the parties have submitted the dispute to arbitration under the rules of the Convention for the Settlement of Investment Disputes, or (C) good faith negotiations are in progress aimed at providing prompt, adequate, and effective compensation under the applicable principles of international law. 22 U.S.C. § 283r. Section 284j, which contains virtually identical language, applies to the World Bank and the IDA. *See* 22 U.S.C. § 284j.

The Helms Amendment essentially combines, and slightly modifies, the Hickenlooper and González Amendments. It addresses the same subject matter as the González Amendment, quoted above, but adds a provision permitting a waiver of the prohibitions contained in sections (a) and (b), below, if the President determines that such is in the national interest. The pertinent sections of the Helms Amendment provide, in relevant part:

(a) Prohibition

None of the funds made available to carry out this Act, the Foreign Assistance Act of 1961 [22 U.S.C.A. § 2151 et seq.], or the Arms Export Control Act [22 U.S.C.A. § 2751 et seq.] may be provided to a government or any agency or instrumentality thereof, if the government of such country (other than a country described if subsection (d) of this section)—

(1) has on or after January 1, 1956—

(A) nationalized or expropriated the property of any United States person,

(B) repudiated or nullified any contract with any United States person, or

(C) taken any other action (such as the imposition of discriminatory taxes or other exactions) which has the effect of seizing ownership or control of the property of any United States person, and

(2) has not, within the period specified in subsection (c) of this section, either—

(A) returned the property,

(B) provided adequate and effective compensation for such property in convertible foreign exchange or other mutually acceptable compensation equivalent to the full value thereof, as required by international law,

(C) offered a domestic procedure providing prompt, adequate and effective compensation in accordance with international law, or

(D) submitted the dispute to arbitration under the rules of the Convention for the Settlement of Investment Disputes or other mutually agreeable binding international arbitration procedure.

(b) Other actions

The President shall instruct the United States Executive Directors of each multilateral development bank and interna-

tional financial institution to vote against any loan or other utilization of the funds of such bank or institution for the benefit of any country to which assistance is prohibited under subsection (a) of this section, unless such assistance is directed specifically to programs which serve the basic human needs of the citizens of that country.

\* \* \*

(f) Reporting requirement

Not later than 90 days after April 30, 1994, and at the beginning of each fiscal year thereafter, the Secretary of State shall transmit to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate, a report containing the following:

(1) A list of every country in which the United States Government is aware that a United States person has an outstanding expropriation claim.

(2) The total number of such outstanding expropriation claims made by United States persons against each such country.

(3) The period of time in which each such claim has been outstanding.

(4) The status of each case and efforts made by the United States Government and the government of the country in which such claim has been made, to take one or more of the steps described in subsection (a)(2) of this section.

(5) Each project a United States Executive Director voted against. as a result of the action described in subsection (b) of this section.

*(g) Waiver*

*The President may waive the prohibitions in subsections (a) and (b) of this section for a country, on an annual basis, if the President determines and so notifies Congress that it is in the national interest to do so.*

22 U.S.C. § 2370a (emphasis added).

■ Principles of statutory interpretation instruct that whenever Congress en-

acts a provision, "it is assumed that it has in mind previous statutes relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes." *Julian v. Equifax Check Services, Inc.,* 178 F.R.D. 10, 14 (D.Conn. 1998) (quoting 2B Norman J. Singer, Sutherland's Statutes and Statutory Construction § 51.02 (5th ed.1992)). In other words, such statutes should be construed together. *See id.* If there is an irreconcilable conflict between two statutes relating to the same subject matter, however, the latter supersedes the former. *See Iwanowa v. Ford Motor Co.,* 67 F.Supp.2d 424, 460 (D.N.J.1999).

In this case, the Helms Amendment and the González Amendment plainly relate to the same subject matter. Reading these two statutes together, the Court finds that the statutory language makes clear that the Helms Amendment incorporates the entire substance of the González Amendment. Importantly, the Helms Amendment adds a national interest waiver provision, which essentially transforms the Presidential duty described therein from a mandatory to a discretionary one. Because the González Amendment contains no waiver provision, there exists an irreconcilable conflict between the two Amendments. As such, canons of statutory interpretation dictate that the Helms Amendment, as the latter of the two, supersedes the González Amendment. *See id.* The Court therefore holds that Plaintiff's claim is governed by the terms of the Helms Amendment, which supersedes both the Hickenlooper and González Amendments. *See* María L. Pagán, *U.S. Legal Requirements Affecting Trade with Cuba,* 7 Pace Int'l L.Rev. 485, 512 (1996) (noting that the Helms Amendment "combines and supersedes the law formerly embodied in the Hickenlooper Amendment and the González Amendment"). Now that the Court has determined the applica-

ble law, it will proceed to analyze the question of standing.

## IV. STANDING

■ Article III's case or controversy requirement limits the jurisdiction of the federal judiciary. *See* U.S. Const., art. III, § 2. The doctrine of standing, as an essential component of the case or controversy requirement, "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990). The "irreducible constitutional minimum of standing" contains three elements. *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136; *Sea Shore Corp. v. Sullivan,* 158 F.3d 51, 55 (1st Cir.1998); *Berner v. Delahanty,* 129 F.3d 20, 24 (1st Cir.1997). First, the plaintiff must have suffered an " 'injury in fact'—an invasion of a legally protected interest which is both concrete and particularized, and actual or imminent, not 'conjectural' or 'hypothetical.' " *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136 (citations omitted). Second, there must be a causal connection between the plaintiff's injury and the defendant's complained-of conduct. *Id.* at 560–61, 112 S.Ct. at 2136 (citing *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)). Finally, it must be likely, not merely speculative, that the requested relief will redress the alleged injury. *Id.* at 561, 112 S.Ct. at 2136 (citing *Simon,* 426 U.S. at 43, 96 S.Ct. at 1926).

■ Plaintiff seeks to enforce a mechanism created by Congress, embodied in the Helms Amendment, to secure the payment of the debt owed it by the Government of the Dominican Republic. Plaintiff alleges that it has been injured by Defendants' failure to issue the required reports to Congress pursuant to 22 U.S.C. § 2370a(f); to make the annual determination under the national interest waiver clause of whether or not to waive the prohibitions in 22 U.S.C. §§ 2370a(a)–(b) as it pertains to the Dominican Republic; and to stop the provision of aid to the Dominican Republic in the event the President does not find waiver in the national interest.

The Court of Appeals for the District of Columbia Circuit held, in a nearly identical case, that a plaintiff seeking to compel the President, the Secretary of State, and the Acting Director of the International Cooperation Agency to withhold foreign assistance from Italy lacked standing to assert such a claim under the Helms Amendment. *See Talenti v. Clinton,* 102 F.3d 573 (D.C.Cir.1996). In *Talenti,* the District of Columbia Circuit found that the plaintiff lacked standing because his injury, the expropriation and rezoning of his property without just compensation, would not be redressed by a favorable court decision. *See id.* at 577. The Court reasoned that even if it granted the relief requested, the prospect that the withholding of foreign assistance would result in just compensation to the plaintiff was speculative at best. *See id.*

Likewise, the possibility that Plaintiff would recover its debt from the Government of the Dominican Republic if the United States withheld foreign assistance is too speculative to support standing. This Court would have to enter into a conjectural thicket to conclude that Plaintiff's injuries would likely be redressed as a result of the United States' actions. To begin with, Plaintiff has neither alleged facts nor produced evidence of the foreign assistance, if any, that the United States currently provides to the Dominican Republic. Thus, the Court would have to assume that the quantity and nature of the assistance was significant, or at least greater than the debt owed to Plaintiff, in order to conclude that the suspension of aid would have any effect whatsoever on the Dominican Government. Even more troublesome, however, is the next level of conjecture mandated by Plaintiff's claim: to support standing, and particularly the redressability prong, the Court would have to conclude that based on the suspension of the aid, the Dominican Republic's likely

response would be to honor its debt to Plaintiff. Arriving at such a conclusion entails standing in the shoes of the foreign government to divine its probable course of action after a judgment by this Court in Plaintiff's favor.

Countries respond to the suspension of foreign assistance in many ways. *See Aerotrade, Inc. v. Agency for Int'l Dev., Dept. of State*, 387 F.Supp. 974, 975 (D.D.C.1974) (noting considerable uncertainty as to whether the suspension of foreign assistance "would aid plaintiff in collecting its debt or would tend to drive [the foreign government] into even greater intransigence"). It is beyond the competence of this Court to predict what course of action the Government of the Dominican Republic would take in response to the suspension of foreign assistance. As the District of Columbia Circuit has observed, "[a] court is rightly reluctant to enter a judgment which may have no real consequence, depending on the putative cost-benefit analyses of third-parties over whom it has no jurisdiction and about whom it has almost no information." *Branton*, 993 F.2d at 912. The Court finds that *Branton*'s cautionary words resonate strongly here. The effectiveness of a judgment in Plaintiff's favor depends entirely on the responsiveness of the Dominican Republic, but Plaintiff has not shown that the Dominican Government would honor its debt if the Court ruled in Plaintiff's favor. *See Sea Shore Corp.*, 158 F.3d at 58 (redressability prong not satisfied where actions of third party not before the court are essential for redress, but plaintiff produced no evidence indicating those actions are likely in response to court decision). The speculative nature of the relief requested vis-à-vis the purported injury simply cannot support standing in this case. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (parent does not have standing to compel use of criminal child support statute against other parent because prospect that prosecution would result in payment of child support too speculative).

Further, it is of no small import that the statute vests the President with discretion to waive the suspension of aid by finding such to be in the national interest. *See* 22 U.S.C. § 2370a(g). It is uncertain, therefore, whether the President would even opt to suspend foreign assistance to the Dominican Republic under the Helms Amendment. The *Talenti* court noted that the suspension of foreign assistance to a country under the Hickenlooper Amendment occurred only twice in that Amendment's thirty-four year history. *See Talenti*, 102 F.3d at 577 (citing Christopher N. Camponovo, *Dispute Settlement and the OECD Multilateral Agreement on Investment*, 1 UCLA J. Int'l L. & Foreign Aff. 181, 202 (1996)). The infrequency with which that provision has been invoked by the Executive renders it improbable that such a scenario would unfold here. Thus, to conclude that Plaintiff would circuitously recover monies owed it by the Government of the Dominican Republic, this Court must infer the likely course of action to be taken not only by the Dominican Government, but also by the President of the United States. The Court declines to engage in such speculation, particularly where, as here, Plaintiff has presented no evidence to show that the Dominican Republic receives foreign assistance from the United States, that the President would exercise his discretion to suspend such assistance, and that the response of the Dominican Republic would be to pay the debt to Plaintiff.

Finally, Plaintiff's attempt to establish standing by casting its injury as procedural—focusing the Helms Amendment's reporting requirements and the Defendants' alleged failure to render the appropriate information to Congress—is unavailing. Here, as in *Talenti*, Plaintiff's alleged injury "is not a lack of publication but a lack of compensation." *Talenti*, 102 F.3d at 578. Plaintiff's interest in Congress' compliance with the Helms Amendment exists only by virtue of Plaintiff's membership in a class

of persons for whom the Helms Amendment was designed to benefit: individuals owed a debt by a foreign government. Thus, Plaintiff's injury relates to the unpaid debt, not to the failure to use the mechanisms that Plaintiff alleges might lead to the eventual recovery of that debt. *See id.* Furthermore, Plaintiff's interest in the disclosure of information to Congress is even more tenuous than its interest in the suspension of foreign assistance, and is insufficient to support standing. *See Aerotrade,* 387 F.Supp. at 975–76 (holding that plaintiff could not show any direct interest in President's disclosure to Congress of his reasons for not suspending foreign aid under the Hickenlooper Amendment sufficient to give plaintiff standing). In any event, Defendants have submitted to the Court evidence that the information regarding Plaintiff's debt would be provided to Congress in the Fiscal Year 2000 annual report, thereby neutralizing any alleged procedural injuries.[1]

## V. CONCLUSION

In view of the Court's holding that Plaintiff lacks standing to maintain this action, Defendants' Motion to Dismiss is hereby **GRANTED.**

**IT IS SO ORDERED.**

---

**1.** Defendants submitted the declaration of Wesley S. Scholz, Director of the Office of Investment Affairs of the Economic and Business Affairs Bureau of the U.S. Department of State, who, in this capacity, oversees the preparation of the State Department's annual report to Congress pursuant to 22 U.S.C. § 2370a(f). Scholz states in his declaration that the information pertaining to Plaintiff's claim against the Dominican Republic would be included in the Fiscal Year 2000 report to Congress, as mandated by the Helms Amendment.